### J. L. Bethune v. The State.

No. 3274.    Decided December 20, 1905.

**1.—Manslaughter—Evidence—Threat—Animus—Bill of Exceptions.**

On a trial for murder, it was error to exclude declarations made by the deceased shortly before the homicide, which though not tantamount to a direct threat against defendant, showed the state of mind of the deceased towards defendant, and would tend to show that he was the aggressor in the difficulty; and this although the purpose of this testimony was not directly stated in the bill of exceptions by defendant.

**2.—Same—Evidence—Threats.**

On a trial for murder, it was error to reject testimony as to the declarations of deceased to the effect that he had a son-of-a-bitch on his farm and was going to put him off; this being exactly what the deceased undertook to do the next day with reference to defendant, and this testimony was equivalent to a threat made by deceased against defendant.

Appeal from the District Court of Kaufman.    Tried below before Hon. J. E. Dillard.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Neyland & Neyland* and *William H. Allen,* for appellant.—On question of threats: Holley v. State, 39 Texas Crim. Rep., 301; Levy v. State, 28 Texas Crim. App., 203.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

A summary of the facts show that appellant was the tenant of deceased J. H. Cook, from whom he had rented a place some two miles from Terrell, for the year 1903.    It seems that he left a portion of said land uncultivated, which appellant attributed to the wet weather. Deceased was negotiating the rent of said land for the next year, to one Pitts, who agreed to break up the uncultivated land, and wanted to secure possession of that, so as to break it up that fall.    Appellant was not willing for him to do so.    Deceased then desired to get posses-

sion of the whole tract, and the difficulty arose about this. On October 7th, deceased came to Terrell, and appellant met him in town, and they discussed the matter of surrendering the land; and he refused to agree to the terms offered by deceased. Deceased cursed and abused him. Appellant shortly afterwards left for his home. That evening, as Pitts was coming by his house, hauling a bale of cotton to Terrell, he accosted him and asked him to tell deceased (Cook) that he could not get to town that evening, that he had to see some cotton pickers, but if deceased would come out they would settle the matter of possession. On arriving at Terrell, Pitts informed deceased of what appellant had said. Whereupon deceased asked Pitts, if he did not think the object of appellant was to get him out there and raise a difficulty with him. Pitts told him, no, that he thought appellant was desirous of settling the matter of possession without a difficulty. On Pitt's return, deceased went with him in his wagon out to appellant's. Deceased asked Pitts on the way, to stop at appellant's house and hear what was said between them. On arriving at appellant's house, they saw him coming from the north side of the land (where there was a little wooded pasture—a part of appellant's rented premises) towards his house, which was on the south side of the lane. Appellant came out into the lane, walked around to the south side of the wagon. In the mean time deceased had gotten out of the wagon, and walked around to where appellant was. Deceased said to appellant, "Bethune, I have two propositions to make to you. Bethune says, 'Let's hear them.' Cook said, 'One of them is: I will take your crops, wagon and team, and I will turn over to you your note; you to give me possession of the place.' Bethune then said, 'Let's hear the other one.' Cook said, 'I will take your crops, gather them, prepare them and haul them to market, at my own expense; also take the wagon and team; feed the team for thirty days, and the proceeds derived from the sale of the crops, wagon and team, to be applied on the note; and if there be anything over, you shall have it.' To this Bethune replied, 'I have a proposition to make to you.' Cook said, 'Let's hear it.' Bethune said, 'You pay me what my crop is reasonably worth, and I will get off your damn place.' Cook replied, •that he was not buying crops. Bethune then said, 'Cook, you have been trying to run over me long enough, you have not done a damn thing you agreed to do.' To which Cood replied, that he did not want to run over him, and to get his papers and see whether or not he had done what he had contracted to do. Bethune replied, that he knew that it was not in the written contract, but that he (Cook) had agreed to fix the fence and had not done it. To which Cook said, 'You are a damn liar.' And then Bethune turned to go and Cook reached out his left hand as if to catch hold of Bethune; at the same time taking a step towards him. Bethune continued to walk away three or four feet, and Cook continued to reach out, trying to catch hold of him, with his left hand, when Bethune faced Cook, at the same time drawing his pistol from out of the waist

band of his pants in front, and fired four shots in rapid succession at Cook. While Bethune was shooting at Cook, he continued to back off, firing his pistol at Cook, and Cook continued to advance and reaching out with his left hand, trying to catch hold of Bethune, until the fourth shot was fired, when Bethune then struck Cook over the head with his pistol, which seemed to addle him, then Cook turned, and asked me, if I would bring him back to town, and I told him I would. He climbed up in the wagon, and these parties went to town. Two shots hit him: one in the breast, below the shoulder (which was fatal) and the other in the arm." This is the statement of Pitts, the State's witness. Appellant's own statement does not vary materially from this, except he says, he started to retreat, when Cook grabbed at him, and he kept looking back at Cook, and he saw Cook make a motion with his right hand to his left breast, and he thought he was going to draw a pistol. He then drew his, turned, and began retreating from Cook, who was still pursuing him, firing at him as he walked backwards. It was also in proof that Cook was in the habit of carrying a pistol, that he had an apparatus, that fastened over his right shoulder, to which the holster (which hung under his left shoulder under his vest) was attached, and in this he carried his pistol. Appellant further testified that when deceased cursed and abused him in town that same morning, he made the same demonstration with his right hand towards his left breast. This is a sufficient statement of the testimony, in order to present the exceptions taken.

The first bill of exceptions is as follows: "It having been proved by the State that defendant shot deceased, and inflicted upon him the wound which caused his death, soon after the deceased had arrived at the home of defendant in company with J. W. Pitts, who had driven deceased out from Terrell in a wagon to defendant's house, and that the trouble grew out of a dispute between defendant and deceased as to the possession of the place defendant was then occupying and had rented from deceased, and that the shooting occurred about 3 o'clock in the evening, and that defendant and deceased had met in Terrell in the morning, and as said J. W. Pitts was returning to Terrell on the evening of the shooting, the defendant sent word by him to deceased that if deceased would come out to his house that evening they could settle, as defendant had to see some cotton pickers, and could not come to town. Defendant lived about two miles from Terrell and between the home of J. W. Pitts, and Terrell, and had gone to town with said Pitts and returned with him in the morning. And it being further shown that Pitts delivered this message, and in response thereto deceased came out with Pitts to the defendant's house; thereupon defendant offered to prove by said J. W. Pitts, and would have proved by him, that on the way from town that evening, while in the wagon with Pitts, going to the home of defendant, the deceased (referring to defendant and to the dispute between them) said, 'God damn him; he has got to get off of that place. I cursed him out

this morning, and he took it like a dog. He is a cowardly son-of-a-bitch.' To the introduction of which evidence, the State objected, on the ground that it was immaterial and did not contain a threat, which objections were sustained by the court, and said evidence was excluded. To which defendant excepted," etc. The only objection urged by the State, as we understand, is that the bill does not sufficiently show the materiality of this testimony. That is, it is said that the same is immaterial and did not contain a threat. By this we understand the State did concede said testimony would be material, if it contained a threat by deceased against appellant; that is, this was the specific objection urged. And the court appears to have sustained the objection to the testimony on this ground. In reply we would say, that it was not necessary that this excluded testimony be tantamount to a direct threat of deceased against appellant. If the excluded testimony showed the state of mind or animus of deceased towards appellant, the same would be testimony tending to show he was the aggressor in the difficulty, and he brought it on. If deceased regarded appellant as a coward; that he had previously on the same day cursed him out, it would show his state of mind and would suggest on another meeting and difference, the course he would most likely take. It occurs to us that this character of testimony, over the objection urged, was admissible, although appellant did not directly state the purpose of this testimony we think there is enough to show the testimony was obviously admissible.

The next bill of exceptions is, as follows: "It having been proved by the State that J. H. Cook had rented the Hardin farm to defendant for the year 1903, and the said J. H. Cook was demanding that defendant vacate said farm, and that he had come from his home (Quinlan, Texas) to Terrell, on the evening before the homicide, and that the shooting grew out of a difference between J. H. Cook and defendant as to the possession of the said farm, complaining that defendant had not properly cultivated the land, some of it laying out. Defendant offered to prove by W. B. Wayne, that he was on the train that came from Quinlan to Terrell, on the evening before the shooting, and that he had a conversation with the said Cook, and that in said conversation, J. H. Cook stated to said Wayne, 'I am going to Terrell. I have a son-of-a-bitch on a farm near there, and I am going to put him off.' Thereupon witness advised him to see a lawyer, that he had had trouble enough; and he replied, 'I am not going to law, I have had enough to do with law. "I am going to put him off, and you may look out, you may hear something.' To which evidence the State objected, because the same was immaterial, and did not contain any threat against defendant, which objection was sustained by the court." The same objection is urged against the admission of this testimony as urged against the other. We make the same observation with reference to the action of the court excluding this, as made to the other bill. To our minds this testimony is equivalent to a threat

made by deceased against appellant. It could have had allusion to no other person, and was evidently directed to appellant. Deceased said he had a son-of-a-bitch on a farm, near Terrell, and was going to put him off. This is exactly what deceased undertook to do the next day, with reference to appellant. To the witness' advice, he had better consult a lawyer, deceased said he had had enough to do with the law; that he was going to put appellant off; that he might look out, he would hear something. This indicated appellant's purpose, and would be strongly suggestive that, in the difficulty which ensued, he was the aggressor.

A number of exceptions were taken to the charge of the court, and to the refusal of the court to give certain requested special instructions. The court charged fully on murder in the first and second degrees, manslaughter and self-defense, and in our view covered every essential phase of the case. Indeed, the charges on manslaughter and self-defense were liberal, so far as appellant's rights were concerned, and we have not been able to discover any reversible error in the charge. We do not believe the special charges requested were required.

For the error of the court in refusing to admit the rejected testimony heretofore discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*