DE ARMAN v. STATE.  (No. 4215.)

(Court of Criminal Appeals of Texas.  Oct. 25, 1916.)

1. INDICTMENT AND INFORMATION ⬤�методом7—SPE-CIAL TERMS OF COURT—STATUTES.

By Code Cr. Proc. 1911, arts. 93, 94, and Rev. St. 1911, art. 1678, the calling of special terms of the district court and the election of special judges is provided for, and an indictment, found at a special term regularly called the grand jury having been impaneled by a special judge duly selected, was valid.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 36–42; Dec. Dig. ⬤➙7.]

2. JURY ⬤➙110(14)—CHALLENGE TO VENIRE-MAN—FAILURE TO SUSTAIN CHALLENGE FOR CAUSE.

Where defendant did not exhaust all of his peremptory challenges, and no unacceptable jury-man was forced on him, there was no error in requiring him to exhaust one of his peremptory challenges on a venireman as to whom the court should have sustained his challenge for cause.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 520; Dec. Dig. ⬤➙110(14).]

3. JURY ⬤➙131(8)—QUESTION TO VENIREMEN—DEATH PENALTY.

In a prosecution for murder, the state's counsel was properly permitted to ask veniremen whether, if taken as jurors, and the evidence justified it, and the law required it, they would hesitate to inflict the death penalty.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 568; Dec. Dig. ⬤➙131(8).]

4. CRIMINAL LAW ⬤➙1120(3) — APPEAL — BILLS OF EXCEPTION—SHOWING OF TESTI-MONY.

Bills of exception, complaining of the court's refusal to permit defendant to propound certain questions to a witness, should state what the witness would have answered or testified to in regard to the matters complained of.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2931, 2932; Dec. Dig. ⬤➙1120(3).]

5. WITNESSES ⬤➙245—EXAMINATION—REPETI-TION OF TESTIMONY.

The court properly refused to permit defend-ant to propound to a witness questions involv-ing matters as to which she had already tes-tified.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 827, 828; Dec. Dig. ⬤➙245.]

6. CRIMINAL LAW ⬤➙547(3)—EVIDENCE—TES-TIMONY AT EXAMINING TRIAL.

A witness was properly permitted to state what he testified to at the examining trial; his testimony not being secondary evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1240–1245; Dec. Dig. ⬤➙547(3).]

7. WITNESSES ⬤➙393(3) — IMPEACHMENT — STATEMENT OF FORMER TESTIMONY.

The written statement taken at the examin-ing trial could be used to impeach a witness stat-ing what he testified to at such trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1254; Dec. Dig. ⬤➙393(3).]

8. WITNESSES ⬤➙396(2)—IMPEACHMENT—EVI-DENCE—ADMISSION OF PART OF STATUTE—PRIOR TESTIMONY.

Under Code Cr. Proc. 1911, art. 811, rela-tive to the admissibility of all of a statement bearing on a matter testified to, in a murder case, where defendant introduced part of the tes-timony given by a witness on another trial for purposes of impeachment, the state was properly permitted to introduce other portions of this testimony relating to the same matter as the por-tion introduced by defendant, since, when a por-tion of a statement or testimony is offered in evidence, all the statement bearing on the matter testified to at the same time is admissible to render the meaning clear.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1263; Dec. Dig. ⬤➙396(2).]

9. WITNESSES ⬤➙412—CORROBORATION—ACTU-ALITY OF SICKNESS CAUSING ADJOURNMENT.

Where court adjourned on account of the illness of a witness who testified that she was ill, her cross-examination not seriously assailing or questioning her testimony on that point, the refusal to permit defendant to introduce evi-dence to prove that she was really sick when court adjourned was proper.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1285; Dec. Dig. ⬤➙412.]

10. HOMICIDE ⬤➙181 — PROVOCATION — EVI-DENCE.

Where defendant claimed to have killed de-ceased because of his relations with defendant's sister, etc., contending that he killed deceased the first time he met him after learning of such mat-ters, the court properly permitted the state to elicit from defendant's brother on cross-exami-nation that he had discussed the matter with de-fendant some three years before, and to prove by other witnesses that defendant and deceased had met on several occasions since.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 383–385; Dec. Dig. ⬤➙181.]

11. HOMICIDE ⬤➙181 — JUSTIFICATION — EVI-DENCE.

Where defendant introduced testimony, to make out justification, that deceased might have been the cause of his sister's ruin, it was per-missible for the state to show that, when defend-ant's brother killed another brother, there was a rumor afloat that such other brother and the sister had improper relations, to show that no improper relations existed between deceased and the sister, as between her and her brother, and that defendant knew of the matter and had dis-cussed it with still another brother.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 383–385; Dec. Dig. ⬤➙181.]

12. WITNESSES ⬤➙330(2)—EVIDENCE — PAS-SION OR PROVOCATION.

In a prosecution for murder, defendant justi-fying on the ground that deceased had ruined his sister, where defendant introduced his broth-er to show that deceased had been guilty, the court properly permitted the state to draw from such brother on cross-examination the statement that he and defendant had discussed before the killing the alleged improper relations between their other brother and sister.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1107; Dec. Dig. ⬤➙330(2).]

13. HOMICIDE ⬤➙169(1) — EVIDENCE — EXPLA-NATION OF CUT.

Where the only way a cut of defendant's was referred to by state's witnesses was that one referred to it incidentally as fixing the time of an occurrence a year before the killing, the court properly refused to permit defendant to go into details of how he received the cut, several years before the difficulty, being permitted to testify that he received it in an effort to separate some other parties engaged in a fight.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 341; Dec. Dig. ⬤➙169(1).]

---

**14. JURY ⬤⟹110(1) — INABILITY TO READ AND WRITE—OBJECTION AFTER VERDICT.**

Where a juror swears that he was not asked on his examination whether he could read and write, objection on that score after verdict comes too late.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 503–505, 515; Dec. Dig. ⬤⟹110(1).]

**15. JURY ⬤⟹133 — INABILITY OF JUROR TO READ AND WRITE—STATUTE.**

Under Code Cr. Proc. 1911, art. 692, subd. 14, providing that the cause for challenge to a juror that he cannot read and write shall not be sustained when the requisite number of jurors able to read and write cannot be found in the county, in a murder case, where it was not shown to the court that there were enough qualified persons residing in the county who could read and write out of whom a jury could be impaneled, the Court of Criminal Appeals is not authorized to review the action of the court in overruling motion for new trial on the ground that a juror, who could not to the court's knowledge read and write, had been impaneled.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 586–598; Dec. Dig. ⬤⟹133.]

Appeal from District Court, Taylor County; B. A. Cox, Special Judge.

Claude De Arman was convicted of murder, and he appeals. Judgment affirmed.

Ben L. Cox, of Abilene, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted of murder and his punishment assessed at 99 years' confinement in the penitentiary.

[1] Shortly after the homicide, Hon. Thomas L. Blanton, judge of the district court, by order duly entered, convened a special term of the court to meet on April 27th. On that day a jury commission was duly sworn and impaneled and instructed to select a grand jury and draw petit jurors. The jury commissioners performed their duties, and the court ordered the sheriff to summon the grand jurors to appear on Monday May 1st, when the court recessed until that day. On May 1st Judge Blanton was absent, and after the sheriff had called court, the lawyers in attendance selected Hon. B. A. Cox to serve as special judge. Judge Cox took the oath required by law, and proceeded to impanel the grand jury. The grand jury thereafter returned into open court an indictment, charging appellant with the murder of Charlie Brown. Upon the return of the indictment appellant was brought into open court, and his cause set down for trial on May 5th. A special venire was regularly drawn, and the sheriff ordered to summon the jurors, making his return on May 4th.

When the case was called for trial appellant filed a plea in abatement, reciting the facts as above stated, in substance, alleging that such special term was, for the reasons stated, illegal, and the indictment should be quashed. The court did not err in overruling the plea. Our laws specifically provide for the calling of special terms of the dis-

trict court and the election of special judges. Articles 93, 94, C. C. P., and article 1678, Rev. Civ. Stats.

[2] Appellant in a bill of exceptions complains that the court erred in requiring him to exhaust one of his peremptory challenges on the venireman J. D. Gaither; that the court should have sustained his challenge for cause. As the record discloses that appellant did not exhaust all of his peremptory challenges, and no juryman unacceptable to him was forced on him, this bill presents no error.

[3] Appellant also complains that state's counsel was permitted to ask the jurors:

"If you are taken as a juror and the evidence justifies it, and the law requires it, would you hesitate to inflict the death penalty?"

This was not an improper question, and would be but one of the tests to ascertain whether or not the juror had any conscientious scruples against the infliction of death for crime. Besides this, the death penalty was not assessed in this case, and defendant does not contend that any juror was challenged or stood aside because of his answer to this question.

[4, 5] In bills Nos. 5, 6, and 7 appellant complains that the court would not permit him to propound to Mrs. J. H. Hicks certain questions. Nowhere in either of the bills is it stated what Mrs. Hicks would have answered or testified to in regard to the several matters complained of. The questions all related to matters occurring some three or four years prior to this homicide, and could have had but little, if any, bearing on the issues involved in this trial. In addition, in reading this record it is made manifest that Mrs. Hicks did testify in regard to all the matters about which appellant desired to question her, and doubtless the court ruled as he did to prevent a repetition of the same testimony.

[6, 7] The witness Roy Barker was properly permitted to state what he testified to at the examining trial. The written statement, taken at the time, could be used to impeach him, if he did not so testify. His stating what he testified to would not be secondary evidence.

[8] When the defendant introduced a portion of the testimony given by Mrs. Hicks on the trial of Edgar De Arman for the purposes of impeachment, there was no error in permitting the state to introduce other portions of this testimony relating to the same matter as that portion introduced by defendant related to. When a portion of a statement or testimony is offered in evidence, then all the statement bearing on that matter, testified to at the same time, is admissible to render the meaning clear. Article 811, C. C. P.

[9] There was no error in refusing to permit appellant to introduce evidence to prove

that Miss Hixie De Arman was really sick when court adjourned on account of her illness. She so testified, and by her cross-examination on that point her testimony in regard thereto was not seriously assailed nor questioned,

[10-12] Appellant claimed on this trial to have killed deceased because of his relations with his sister, Miss Lulu De Arman, and insult to his sister, Miss Hixie De Arman. His contention was that he killed deceased the first time he met him after learning of these matters. Under such circumstances there was no error in the court permitting the state to elicit from Terry De Arman on cross-examination that he had discussed with appellant, some three years prior to this time, this matter, and to prove by other witnesses that appellant and deceased had met on several occasions since that time. And as appellant was contending there was trouble existing between Will De Arman and Edgar De Arman at the time Edgar shot and killed Will, and was further contending that appellant had testified against Edgar at the time he was convicted, it was permissible for the state to show that at that time there were rumors afloat that Will De Arman and his sister, Lula, were engaging in improper relations. Appellant's sister, Lula, gave birth to a baby at about that time, and while appellant was introducing testimony that deceased may have been the cause of his sister's ruin, it was permissible for the state to show, if it could do so, that no improper relations existed between deceased and Lula, and that improper relations existed between her and her brother Will, and that appellant knew of it and had discussed the matter with his brother Terry. Appellant had introduced Terry to show that deceased was guilty of improper relations with his sister, and there was no error in the court permitting the state to draw from the witness on cross-examination the following statement:

"Me and the defendant Claude had discussed, prior to the killing of Charlie Brown, the relations between Will De Arman, my brother that was killed, and my sister Lula De Arman. As to whether we had discussed the fact or the alleged fact that my dead brother, Will De Arman, had been having sexual intercourse with my sister Lula De Arman from the time she was 14 years old until Will De Arman was killed, we had suspicioned it and talked of it to that effect. I did not see the affidavit made by my sister Lula. I don't know whether I was in town with her the day she made it. She told me she made an affidavit; that's all."

And after this testimony was introduced, the comments of Mr. Cunningham thereon in his argument were legitimate, and the bill complaining of such remarks presents no error.

[13] The court did not err in refusing to permit appellant to go into details of how he received a cut several years before this difficulty. The only way it was referred to by state's witnesses was that Mr. Gist referred to it incidentally as fixing the time of a certain occurrence in 1915, a year before this killing occurred. Appellant was permitted to, and did, testify that he received it in an effort to separate some other parties engaged in a fight.

[14] The only other question raised in the record before us is that the juror J. W. Glaze, who served as one of the jurors in this case, could not read nor write. We might pass this off by stating that the juror swears no such question was asked him on his examination. Under such circumstances objection after verdict would come too late. But subdivision 14 of article 692 provides that this cause for challenge shall not be sustained when it appears to the court that the requisite number of jurors able to read and write cannot be found in the county. Without wishing to reflect on the citizenship of Taylor county (if it should be a reflection), we will say that in the testimony heard appellant offered no evidence that a sufficient number of jurors resided in Taylor county who could read and write from whom to select a jury. Even had the court known at the time the juror was impaneled that he could not read nor write (which he did not), still unless it was shown there was a sufficient number of qualified persons residing in Taylor county who could read and write, out of whom a jury could be impaneled, we would not be authorized to review the action of the court in overruling the motion for a new trial on this ground.

We have not undertaken to give a synopsis of the testimony. The details of the killing as detailed by appellant are horrible. The only issue in the case as made by him is, Did the evidence show that his mind was so inflamed by an adequate cause as to reduce the offense to manslaughter? This issue was fairly submitted to the jury in the court's charge; all legitimate evidence bearing on that issue tendered was admitted, and the jury was fully authorized to find on the testimony we have before us that the killing occurred in accordance with a predetermined determination to kill while appellant's mind was cool and collected, and that he was perfectly cool and collected when he ran Brown down and killed him.

The judgment is affirmed.

---

WARBINGTON v. STATE.　(No. 4223.)

(Court of Criminal Appeals of Texas.　Oct. 25, 1916.　Rehearing Denied Nov. 15, 1916.)

1. CRIMINAL LAW ☜1159(3) — APPEAL — REVIEW — QUESTIONS OF FACT — CONFLICTING EVIDENCE.

On a criminal appeal, if all the incriminating testimony is sufficient to convict, the verdict will not be disturbed, whether such testimony is disputed or not.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3076; Dec. Dig. ☜1159(3).]