EWELL MORRIS v. THE STATE.

No. 7763.    Decided June 6, 1923.

Rehearing denied November 28, 1923.

1.—Murder—Continuance—Motion for New Trial.

Where the motion for a new trial was not supported by the affidavit of the alleged absent witnesses, it justified the trial court in his discretion in refusing the motion for a new trial based on the overruling of the application for a continuance, there is no reversible error.

**2.—Same—Bills of Exception—Practice on Appeal.**

Where the bills of exception complaining of the various rulings of the trial court in the admission or the rejection of the testimony, claimed to affect the issue of insanity, presented no reversible error, there is no error.

**3.—Same—Bills of Exception.**

Where the matters contained in the bills of exception with reference to the testimony that a witness knew certain doctors and that they were connected with the insane asylum at San Antonio, etc., showed no error, there is no reversible error.

**4.—Same—Insanity—Monomania—Charge of Court.**

Where appellant sought to have given a requested charge on monomania, but there was no evidence raising this issue, and the main charge of the court was full and fair in presenting the law applicable to every phase of the issue of insanity, there is no reversible error.

**5.—Same—Witness Under Rule.**

That an attorney at law who was a witness upon the hearing of the motion for a new trial was excused from the rule, presents no violation of the discretion of the trial court.

**6.—Same—Motion for a New Trial—Newly Discovered Evidence.**

Where the trial court did not abuse his discretion in overruling the motion for a new trial for newly discovered evidence, there is no reversible error. Besides the affidavit was made before defendant's attorney.

**7.—Same—Sufficiency of the Evidence—Death Penalty.**

Where, upon trial of murder inflicting the death penalty, there was no reason for the killing except an evil and cruel disposition, and the issue of insanity was duly submitted to the jury, there is no reversible error.

**8.—Same—Rehearing—Insanity—Charge of Court.**

In view of the manner in which the court instructed the jury on insanity it is conceived that there was no error in refusing to give the requested charge on the subject of monomania. Following Merritt v. State, 39 Texas Crim. Rep., 78.

**9.—Same—Continuance—Motion for New Trial.**

Where the action of the trial judge in overruling the motion for a continuance and for new trial implied the conclusion that there was no probability of securing the attendance of the alleged absent witnesses by a postponement or continuance, or that if present there was a probability that their testimony would produce a different result, there was no error in overruling the motion.

Appeal from the District Court of Victoria. Tried below before the Honorable John M. Green.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*E. L. Dunlap* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Victoria County of murder, and his punishment fixed at death.

Without dispute in the record it is made to appear that on the date alleged in the indictment appellant shot and killed Oliver Marshall with a shotgun. The shooting took place in the late afternoon and seems to have been witnessed by no one. Physicians who examined the body of deceased said from the number of shot entering close together, the shot must have been fired at close range. The only defense was that of insanity and much evidence was heard *pro* and *con* on this issue.

Appellant asked for a continuance to obtain the testimony of several men who had been confined in jail with him subsequent to the date of the alleged homicide. The application stated that subpoena was issued for these witnesses on the 29th day of November 1922. Counsel had been appointed to defend appellant a number of days prior to this time. The application does not state the length of time the absent witnesses had been in jail with appellant. Same sets out the facts which would be given in testimony by the absent witnesses and upon which it is stated they would base their opinion that appellant was of unsound mind. The absent witnesses were not served with process. In the qualification of the learned trial judge to the bill of exceptions based on the refusal of the continuance, it is stated that diligent inquiry was made by him of the officers having said process and that they stated they could not find or hear of the witnesses in the county. It is not shown whether said absent witnesses had been discharged from jail, or whether they had been convicted for some felony, or whether they were fugitives from justice. The affidavits of none of them are appended to the motion for new trial. We seriously doubt the diligence shown and are not inclined to think the testimony expected from them of that materiality which would justify us in concluding that the trial court abused his discretion in refusing the motion for new trial based on the overruling of the application for continuance. We observe from the record that six witnesses who were in jail with appellant were introduced as witnesses on his behalf on the question of his mental unsoundness, as well as a number of other witnesses.

Appellant's bills of exception Nos. 2 to 15 complain of various rulings of the trial court in the admission and rejection of testimony claimed to affect the issue of insanity. We have carefully reviewed each of these bills of exception and are of opinion that they present no error. The questions raised would be of no benefit if set out at length here and would furnish no aid to the profession and present no new ruling as far as we are able to perceive. The preservation of the various grounds of error contained in these bills of exception

96 T. C.—5

reflect the. careful and commendable effort on the part of learned counsel appointed to represent the appellant.

Bill of exceptions No. 16 presents no further fact than that a witness for the State was permitted to testify that he knew certain doctors and that they were connected with the Insane Asylum at San Antonio. The matters contained in said bill of exceptions going no further than this, seem to present no error. Nor are we able to perceive injury in the contents of bill of exceptions No. 17 which complains of the refusal of the trial court to allow a witness for the defense .to testify that a doctor from San Antonio had stated to the witness that he did not know that he was summoned for the defendant, but thought he was summoned for the State.

·Appellant sought to have given a special charge on monomania but we find no evidence calling for the giving of such charge. In our opinion the charge of the trial court was particularly full and fair in presenting the law applicable to every phase of the issue of insanity.

That an attorney who was a witness upon the hearing of the motion for new trial was excused from the rule would seem to be no violation of the discretion of the trial court.

The court heard the evidence offered in support of appellant's motion for new trial and concluded that same did not justify the granting of such motion. It was claimed that evidence that the parents of appellant were of weak minds or of unsound minds, was newly discovered. The brothers and sisters of appellant were witnesses in his behalf and must of necessity have been cognizant of the facts set up in the affidavits appended to the motion for new trial. We further observe that said affidavits were taken by appellant's attorney which is contrary to the rule announced by many decisions of this court.

The extreme penalty inflicted by the jury in this case has caused us to give it careful consideration. Deceased had bought the land on which appellant's family were tenants and thereafter feeling had grown up in their minds against deceased. Appellant made a written confession of his guilt in this case, setting out in detail some of the causes upon which he based his dislike of deceased. There seems practically no reason for the killing except an evil and cruel disposition. The only possible defense would seem to be the one which was interposed by appellant's counsel. A number of witnesses testified in support of the defense of insanity, and also a number of persons who had known appellant for many years, some of them all his life and some for a shorter time, testified that in their opinion he was of sound mind. As stated above, the learned trial judge very fully and fairly submitted this issue and the jury have determined it against appellant.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

November 28, 1923.

MORROW, PRESIDING JUDGE.—The appellant, with his mother and two sisters, resided upon a tract of land which had been purchased by Oliver Marshall, the deceased. After buying the land, a new rental contract was made with appellant's mother. The appellant was twenty-one years of age. Marshall took possession of land in the same tract, and some of the buildings were used in common. The appellant regarded Marshall as officious in his interference with the part of the land which was in possession of the appellant and the members of his family. Marshall rode over the place at various times and complained that the fence posts were destroyed. He also made excessive use of the barn. When the appellant went after water he often saw Marshall, who complained of the appellant's failure to destroy the Johnson grass, the burning of fence posts and other shortcomings on appellant's part. Appellant used this language: "Some of the neighbors around here let me have signs that that was none of Mr. Marshall's business, and let me know that I had either to kill him or he would kill me. That was a Mexican named Pete."

Appellant borrowed a shotgun, sold chickens and with the proceeds bought shells, fired the gun to test it and see if it would kick, examined the post into which the shots were fired, and then waited for some three hours until Marshall appeared. When Marshall passed him with a bucket of water in each hand, appellant fired and killed him. After the shooting, appellant went to his home and was advised by a Mexican that he had better leave. This he did, but was later arrested in the neighborhood at the home of a relative. These matters come from the appellant's confession, sufficiently corroborated.

There was testimony that the appellant had talked in his sleep about seeing Marshall and that he was afraid to sleep in his bedroom or alone. There was other testimony to the effect that the appellant had complained of Marshall's conduct.

In connection with the usual and approved charge submitting the issue of insanity, the court embraced in his charge, this instruction:

"Whether the insanity be general or partial, whether continuous or periodical, the degree of it must have been sufficiently great to have controlled the will of the accused and to have taken from him the freedom of moral action, at the time of the commission of the act. Where reason ceases to have dominion over mind proven to be diseased, it then reaches the degree of insanity where criminal responsibility ceases and accountability to the law, for the purpose of punishment, no longer exists.

Whether that degree of insanity existed in the defendant at the time of the alleged crime, is the important question on this issue. If it is true that the defendant took the life of the deceased, and at the time the mental and physical faculties were beyond the control of the defendant, or if some controlling mental or physical disease was in truth the acting power within him, which he could not resist, and he was impelled without intent, reason, or purpose, he would not be accountable to the law. If, on the other hand, his mind was sufficiently sound to be capable of reasoning and knowing the act he was committing to be unlawful and wrong, and knowing the consequences of the act, and had the mental power to resist and refrain from its commission, his plea of insanity would not avail him as a defense.

It is an essential ingredient of murder that the person, to be guilty of that crime, must be one of 'sound mind and discretion'; the meaning of which is, that he must have capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he is then doing. Although a man may be laboring under partial insanity, if he still understands the nature and character of his act, and its consequence; if he has a knowledge that it is wrong and criminal, and mind sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong· and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for his criminal act. But if the mind was in a diseased and unsound state, to such a degree that for the time being it overwhelms the reason, conscience and judgment, and the defendant in committing the crime acted from an irresistible and uncontrollable impulse, then it would be the act of the body, without the concurrence of the mind. In such case there would be wanting the necessary ingredient of every crime; the intent and purpose to commit it.''

In view of the manner in which the court instructed the jury, it is conceived that there was no error in refusing to give the special charge on the subject of monomania. In so far as the evidence suggested that issue, it was sufficiently covered by the main charge. The bill fails to disclose that the special charge was presented before the jury was instructed and might be ignored for that reason. However, in view of the extreme penalty, it has been considered. If the appellant was sane upon all other subjects, the fact that he had a delusion that the deceased was an enemy and might at some time kill the appellant or some member of his family, such delusion would not excuse the killing of the deceased at a time when he was doing nothing indicating a present intent to injure the appellant, and when his situation was such as precluded the idea that he had any immediate design to injure him. In other words, if appellant's sanity was partial and consisted merely in a delusion such as that above described and was in other respects sane, his responsibility for his

acts is to be considered as though the facts which in his delusion seemed to be real, were, in fact, real. See Merritt v. State, 39 Texas Crim. Rep., 78, in which is found this quotation:

''The answer of the English judges on the special topic of delusion is as follows: 'The answer must, of course, depend on the nature of the delusion; but, making the same assumption as we did before, namely, that he labors under such partial delusion only, and is not in other respects insane, we think he must be considered in the same situation as to responsibility as if the facts with respect to which the delusion exists were real. For example, if, under the influence of his delusion, he supposes another man to be in the act of attempting to take away his life, and he kills that man, as he supposes, in self-defense, he would be exempt from punishment. If his delusion was that the deceased had inflicted a serious injury to his character and fortune, and he killed him in revenge for such supposed injury, he would be liable to punishment.' ''

A motion to continue the case was made to secure the attendance of several witnesses. The offense took place on the 10th of August. Appellant was then incarcerated and remained in jail until the date of his trial—December 5th. The witnesses had been inmates of the jail during the appellant's incarceration. Victoria County was given as the residence of two of them, the town of Yoakum in DeWitt County for one and Calhoun County for the other. A subpoena was applied for with sufficient diligence after the indictment. It was returned on the 5th of December, but none of the witnesses were served. The court in qualifying the bill states that he made inquiry in open court with reference to the absent witnesses and learned from the officers that after diligent search no information could be obtained with reference to the witnesses. The testimony expected of each of them was in substance the same, namely, that they had been in the same jail with the appellant and had observed his conduct and had noticed certain peculiarities with reference to it, among other things, the frequency and peculiar manner in which he would wash his hands, his failure to dry them, his picking his finger nails, his manifestation of solicitude upon the discovery of cobwebs or dust upon his hands, his mumbling to himself, his neglect to change his clothes, his smoking to excess when he had tobacco, and his practice of masturbation. Based on these facts, an opinion that appellant was insane would have been given. With reference to each of these witnesses, the averment is that ''the witness has since the 11th day of August, A. D., 1922, been confined in the county jail at Victoria, Texas, in the same enclosure with the defendant herein, Ewell Morris.'' That the witnesses had not remained in jail during all of the intervening time is made definite by the investigation certified by the trial judge.

There is a mass of testimony concerning the life, habits and peculiarities of the appellant, the statement of facts containing over 200 pages of typewritten matter, being in the main devoted to the issue of insanity. The action of the trial judge implies the conclusion that there was no probability of securing the attendance of the witnesses by a postponement or continuance, or that if present, there was a probability that their testimony would produce a different result. In forming this conclusion, we are not prepared to say that the trial judge abused his discretion; nor can we say, in the light of the evidence adduced, that the learned trial judge, in denying a new trial, exceeded the limits of the discretion vested in him by law.

The motion is overruled.

*Overruled.*