### ALEXANDER v. STATE. (No. 11590.)

Court of Criminal Appeals of Texas. April 4, 1928.

Rehearing Denied June 30, 1928.

**1. Jury ⚌70(12)—Sheriff's return to special venire writ explaining failure to serve certain jurors held not to require quashing writ without specific attack.**

Sheriff's return to special venire writ, explaining failure to serve certain jurors, *held* not so general or incomplete as to require quashing venire, in absence of some specific attack by averment or evidence challenging diligence of sheriff in executing writ.

**2. Criminal law ⚌645—State held properly permitted to open and close argument, though killing was admitted (Vernon's Ann. Code Cr. Proc. 1925, arts. 648 and 642, subds. 2, 4, 5).**

Under Vernon's Ann. Code Cr. Proc. 1925, arts. 648 and 642, subds. 2, 4, and 5, relative to order of argument, state's counsel was properly permitted to make opening statement and to open and close argument without regard to fact that defendant had admitted killing deceased and defended on theory that at time of act he was insane.

**3. Homicide ⚌158(2)—Testimony of threat by defendant some three months before homicide held not inadmissible as too remote and indefinite.**

In prosecution for murder, testimony as to a conversation with defendant and declaration by him some three months before homicide, con-

sisting of a threat that he was going to kill the whole d——n family, *held* not inadmissible on ground of being too remote and too indefinite.

**4. Homicide ⚖══158(2)—Threat is not ordinarily inadmissible because remote in point of time.**

That a threat may be remote in point of time is not ordinarily deemed a sound reason for excluding it in evidence.

**5. Criminal law ⚖══1170½(2)—Cross-examination of character witness as to knowledge that defendant had snapped pistol at another did not require reversal, in view of negative answer.**

In prosecution for murder, cross-examination of character witness for defendant by direct question as to whether witness knew that defendant had snapped pistol at another on day of killing, though objectionable, *held* not to require reversal, where reply was in the negative.

**6. Criminal law ⚖══1119(2)—Cross-examining character witness as to knowledge of defendant's shooting at certain man held not error without showing response thereto.**

Cross-examination of character witness for defendant by propounding question as to whether he knew defendant shot at a certain man *held* not to constitute error, in absence of showing that witness made any response thereto, though question was improper.

**7. Criminal law ⚖══465—Nonexpert testimony as to defendant's sanity held properly admitted, where witnesses detailed facts on which opinions were based.**

In prosecution for murder, testimony of nonexpert witnesses touching sanity of defendant *held* properly admitted, where witnesses detailed the facts on which their opinions were based.

**8. Criminal law ⚖══1169(12)—Admission of testimony as to statements of accused while in custody as basis for opinion on insanity did not require reversal under circumstances (Vernon's Ann. Code Cr. Proc. 1925, art. 727).**

In prosecution for murder, admission of testimony relative to verbal statements by defendant at time he was in custody and unwarned as basis for opinion on sanity, though erroneous, under Vernon's Ann. Code Cr. Proc. 1925, art. 727, forbidding introduction of confession unless made under certain circumstances, *held* not to require reversal, in view of other evidence abundantly proving killing as testified to by witness as predicate for opinion on such issue of insanity, and killing of deceased by defendant under circumstances stated not being a controverted fact.

**9. Criminal law ⚖══804(9)—Failure to give defendant's attorneys sufficient time for consideration of charge held not error without request for further time.**

Failure of court to give attorneys for defendant sufficient time for consideration of charge *held* not to constitute error, in absence of request for time for further examination or preparation of further special charges or objections.

**10. Homicide ⚖══309(5)—Failure to charge on circumstances justifying killing or reducing offense held not error under evidence authorizing acquittal only for insanity.**

Failure of instruction in prosecution for murder to relate circumstances which would justify killing or reduce offense to negligent homicide *held* not erroneous, where sole theory on which jury would have been authorized to acquit was that of insanity.

**11. Homicide ⚖══294(1)—Refusal of charge on particular phase of insanity at time of killing held not error.**

In prosecution for murder, wherein defense was that of insanity at time of killing, refusal of charge on particular phase of insanity *held* not erroneous, where jury was instructed to acquit in case defendant was believed to be insane in the sense that he was unable to distinguish right from wrong with reference to the act in question.

**12. Criminal law ⚖══49—Responsibility of one committing crime under insane delusion is adjudged as though delusions were true.**

One who commits a crime while acting under an insane delusion is to be judged, so far as criminal responsibility is concerned, precisely as if the facts which in his delusion he believes to be true were actually true.

**13. Criminal law ⚖══1037(1), 1055—Complaint of argument of state's counsel is not reviewable without exceptions or objections at time of argument.**

Complaint of argument of state's counsel will not be reviewed on appeal, in absence of exceptions or objections addressed thereto at time argument was made.

**14. Criminal law ⚖══726—Remarks of state's counsel in response to argument of defendant's counsel are not error.**

Remarks of state's counsel, made in response to argument of defendant's counsel, *held* not to constitute error as coming within rule relating to invited error.

**15. Criminal law ⚖══923(1)—Refusal of new trial because one of jurors could neither read nor write held not error under circumstances (Vernon's Ann. Code Cr. Proc. 1925, art. 616, subd. 14).**

Refusal of new trial on ground that one of jurors could neither read nor write, as required by Vernon's Ann. Code Cr. Proc. 1925, art. 616, subd. 14, *held* not erroneous under circumstances showing that juror stated he could read and write and had previously served on juries, not deeming it necessary to state extent of capacity in that particular.

Appeal from Criminal District Court, Harris County; Whit Boyd, Judge.

O. T. Alexander was convicted of murder, and he appeals. Affirmed.

Thos. C. Turnley and J. M. Gibson, both of Houston, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

MORROW, P. J. The offense is murder; punishment fixed at death.

Appellant shot and killed his wife, Mattie Alexander. At the time of the homicide they had been separated for about a year. Several months before the killing, appellant had stated to the father of the deceased that he "was going to kill the whole d——n family." Appellant went to the abode of the deceased and shot her with a pistol, inflicting two wounds. According to the state's evidence, she, at the time, was pleading with the appellant to spare her life. In his written confession, the appellant stated in substance: That he went to the home of the sister of his wife, where she was residing, and, after asking where his daughter was, pointed his pistol at her. She ran toward the back of the house, and he ran around it. When they met, she grabbed him and his pistol fell out of his hands. He picked it up and shot her. He knew he had shot her when she fell, and he killed her because she had put some "dope" or something in what he ate. That he had talked to her three times since they had separated, and that he had made up his mind that he was going to kill her because she had put "dope" in his food. That the reason he had not killed her before was that he did not have a pistol with him. She had no weapon and made no effort to hurt him, and tried to prevent being killed. He identified the pistol which was in his possession at the time of his arrest as the one used in the homicide, and the cartridges taken from him at the same time were also identified as belonging to him.

The appellant did not testify, but introduced witnesses in support of his theory that at the time the act was committed he was insane. He also introduced witnesses to support his reputation as a quiet, peaceable, and law-abiding man. He was 36 years of age, had resided in Houston for 10 or 12 years, and had not previously been in trouble. The father of the appellant said that some months before the homicide appellant came to the home of the witness and seemed half crazy; that he laid down on the floor and said: "Oh, my head! My wife has poisoned me." He said his children were dead. They, at the time, were in the house of the witness.

The homicide took place in July, 1927. From the witness "Madame Carothers" it appears that she was engaged in the treatment of deranged persons, and that the appellant was brought to her house in September, 1926, for treatment. From her testimony it appears that the appellant had talked "hoodoo"; that by the influence of "hoodoo" the wife of the appellant was trying to poison him in order to obtain his property. After the homicide the appellant went immediately to the home of the witness and she notified the sheriff's department. She said that she had cured a number of people, and that from the appellant's declarations and statements to her,

his idea was that his wife's people were working "hoodoo" on him. She further testified that a "hoodooed" man believes in it all the time and could not get his mind off of it. Unless the witness mentioned was an expert, there were no expert witnesses upon the issue of insanity. The testimony of nonexpert witnesses upon that subject was conflicting. It was made evident that the appellant was not at any time incapacitated from performing the ordinary duties of life and was not regarded insane in the sense that he required restraint. These witnesses expressed the opinion that the appellant, at the time of the homicide, was mentally unsound so that he did not know right from wrong.

There is an exception to the failure of the court to quash the special venire writ. A writ containing 75 names was returned showing service on 37 of the persons and failure to serve the remainder. Opposite each name in the writ was the address of the venireman. In the return the reason for the failure to serve was stated by the sheriff opposite the name of each of the veniremen. In some of these the notation is made:

"There is no such address as that given, and after due search and diligent inquiry this party could not be found in Harris county, Tex."

And:

"I called at the address given, and was there informed that he is temporarily out of the county."

And this:

"I called at the address given, and was there informed that he was not at the same, and no information concerning his whereabouts could be had, and after due search and diligent inquiry, could not be found in Harris county, Tex."

[1] These are illustrative of the reasons given in the return. A motion to quash the venire was made, and, in the alternative, that an alias summons issue for the absent jurors, and that a postponement be ordered delaying the trial for a reasonable time for service. The motion was overruled. Four jurors were selected from the list of those appearing. Talesmen were ordered, and from them the jury was completed. As the bill is explained, it appears that the appellant used 13 peremptory challenges. It is obvious that the facts set up in the motion were not such as to require that the venire be quashed. There was no vice in the writ; nor is it thought that that part of the return explaining the failure to serve was general or incomplete so as to demand amendment in the absence of some specific attack by averment or evidence challenging the diligence of the sheriff in executing the writ. A somewhat similar matter was discussed at some length in the case of Whittington v. State, 86 Tex. Cr. R. 1, 215 S. W. 456. Other precedents will be found in

Vernon's Ann. Tex. C. C. P. vol. 2, under article 598. See, also, Jones v. State, 85 Tex. Cr. R. 538, 214 S. W. 322.

[2] The position is taken by the appellant's counsel indicating that the fact that the deceased was killed by the appellant being admitted, the right to open and close, both as to the preliminary statement and argument, inured to the accused. The statute (article 648, C. C. P. 1925) touching the argument, states:

"The order of argument may be regulated by the presiding judge; but the state's counsel shall have the right to make the concluding address to the jury."

In article 642, C. C. P. subd. 2, it is declared that after reading the indictment and entering of the plea of not guilty, state's counsel may state to the jury the nature of the accusation and the facts which are expected to be proved by the state in support thereof, and after the state's testimony in chief is closed, a like statement may be made by the appellant's counsel. See subdivisions 4 and 5, art. 642, supra. We are aware of no authority varying these statutory directions, and are constrained to dissent from the appellant's contention that in permitting the state's counsel to make the opening statement and to open and close the argument in the case the rights of the appellant were infringed.

[3, 4] The complaint that the testimony of the witness Dockins, touching a conversation with the appellant and the declaration by him some three months antecedent to the homicide, should have been excluded upon the ground that it was too remote and too indefinite to be receivable as a threat, is not deemed sound. Dockins was the father of the deceased. At the time the conversation took place, the appellant and his wife had been separated some four or five months, and, according to the witness, he and the appellant met for the first time after the separation, and the appellant said: "What did you interfere with me and my family for?" Also: "Hush! don't say anything to me; I won't stand any talking. I am going to kill the whole d——n family." That a threat may be remote in point of time is not ordinarily deemed a sound reason for excluding it in evidence. Hamilton v. State, 83 Tex. Cr. R. 90, 201 S. W. 1009. The language used does not import a threat, general in its application, such as would render it inadmissible. Its application to the deceased was sufficiently definite to render the proof of it admissible. See Bethune v. State, 49 Tex. Cr. R. 166, 90 S. W. 1014.

[5] Shambaugh, a witness for the appellant, testified that the general reputation of the appellant as a peaceable, law-abiding citizen was good. On cross-examination, he was asked: "Did you know that he snapped a pistol at John Granville on the same day that this killing occurred?" The witness replied: "No." The appellant having put his reputation in issue, his witnesses, might, with propriety, be cross-examined touching their knowledge on the subject. However, the law would not warrant extending the cross-examination to specific acts discrediting to the accused. See Wright v. State, 98 Tex. Cr. R. 513, 266 S. W. 783; Goss v. State, 104 Tex. Cr. R. 456, 284 S. W. 579. The question propounded in the present case can hardly be said to have observed the rule. If the question had been, "Have you heard that the appellant had snapped a pistol," etc., it would not have been objectionable. However, since the reply was in the negative, we would not regard the matter as such transgression as would require a reversal of the judgment.

[6] On the same subject in another bill, the appellant complains that the same witness was propounded this question: "Did you know he shot at a man named Carr?" The bill is meager touching the surrounding circumstances, but the question seems to have been improper. However, the bill fails to show that the witness made any response. It is therefore inadequate to show error.

[7] In several bills of exceptions complaint is made of the ruling of the court in receiving testimony of nonexpert witnesses touching the sanity of the appellant. Each of these bills reflects the fact that the witnesses detailed before the jury the facts upon which their opinions were based. Propriety having reference to the length of this opinion precludes a detailed discussion of each of these bills. However, we think none of them offend against the rule which forbids the receipt of testimony of a nonexpert witness upon the issue of sanity, where the witness fails to accompany his opinion with facts upon which it is based. In each instance, the witness testified to his acquaintance with the appellant and to conversations with him, and gave in detail testimony to facts showing opportunity to observe his demeanor and appearance. See Shields v. State, 104 Tex. Cr. R. 253, 283 S. W. 844; Langhorn v. State, 105 Tex. Cr. R. 470, 289 S. W. 57; Gardener v. State, 90 Tex. Cr. R. 339, 235 S. W. 897; Thomas v. State, 98 Tex. Cr. R. 428, 266 S. W. 147.

The above remarks apply to bills Nos. 6 to 8 inclusive; also, to bills Nos. 10 and 11.

[8] In bill No. 9 it appears that while the appellant was in jail charged with the offense, at the time of his arrest and soon thereafter, a deputy sheriff conversed with him. In reply to questions by the witness, the appellant, among other things, said that "he and his wife were scuffling; that the gun fell the first time; that he reached down and got it and put it right by the side of her head and shot her; that he said if she is dead that is what he wanted; he accomplished his purpose. The bill reveals much additional tes-

timony, some of which is exculpatory and some of which is incriminating. Based upon this testimony the witness gave his opinion that the appellant was of sound mind. In receiving this testimony over the objection of the appellant, the learned trial judge, in the opinion of this court, fell into error. The appellant at the time was in custody, and unwarned; made a verbal statement not admissible as a confession. The statute (article 727, C. C. P. 1925) forbids the introduction of a confession unless it is made under the circumstances set forth in the section of the statute mentioned. In a case where one pleads not guilty and interposes evidence as to his sanity as one of the defenses to the criminal act charged, the force of the confession statute is not to be obviated by using the declaration of the accused as the predicate for an opinion against his sanity. It is permissible to use the declarations touching collateral matters, but not those such as were used in the present case which show the commission of the criminal act charged. See Calloway v. State, 92 Tex. Cr. R. 506, 244 S. W. 549, and numerous precedents therein cited. In the present instance, however, the act of the appellant in shooting his wife under circumstances showing malice, in the absence of justification, excuse, or mitigating facts, was proven by eyewitnesses and was not controverted. Moreover, the appellant made a written confession, complying with the statutory requirements, which was introduced in evidence and which coincides with the inculpatory matter embraced in the bill. The testimony of the witness improperly received added nothing to that which was in evidence from other sources, including the confession of the appellant. The killing of the deceased by the appellant under the circumstances stated was not a controverted fact. It was abundantly proved by evidence independent of that improperly given by the witness as a predicate for his opinion on the issue of insanity. Under these circumstances, a reversal of the case could not be ordered because of the error mentioned. See Gonzales v. State (Tex. Cr. App.) 299 S. W. 901; Bonilla v. State (Tex. Cr. App.) 2 S.W.(2d) 248; also, Vernon's Ann. Tex. Crim. Stat. 1916, vol; 2, p. 904, notes 27, 28.

Objection was addressed to the introduction of the written confession of the appellant. Its receipt was preceded by the proper predicate, and the document, in form and substance, fully complied with the statutory requirements. See article 727, C. C. P. 1925. No tenable objection was urged against it.

[9] There is an exception to the failure of the court to give sufficient time for the consideration of the charge by the attorneys for the appellant. As qualified, it appears from the bill that after examining the charge for the half hour allowed, appellant's counsel presented four exceptions to the charge and six special charges, but made no request for time for further examination or the preparation of further special charges or objections. The qualification further states that no exception was taken with reference to the matter of length of time allowed, and that if requested further time would have been accorded.

There are several exceptions addressed to the court's charge; also several special charges requested and refused, to which exception was taken. Paragraphs 1, 2, 4, 5, 6, and 7 of the court's charge are in substance as follows: The first and second paragraphs define murder as it is defined in section 1, c. 274, General Laws of the Fortieth Legislature. Paragraph 3 states the punishment for murder. Paragraph 4 states, in substance, that to justify a conviction, the evidence must show beyond a reasonable doubt that the homicide was committed under circumstances which would not reduce the offence to negligent homicide or justify or excuse it. In paragraphs 5 and 6, malice aforethought is defined in terms which have often been approved by this court. In paragraph 7 the jury was instructed that unless the appellant, in committing the homicide, acted with malice aforethought, there could be no penalty assessed against him of more than five years' confinement.

The first exception was based upon the ground that the definition omits premeditation and malice aforethought, and fails to differentiate it from justifiable homicide on the one hand and sudden heat or passion on the other. The second exception is that the definition is misleading in that it does not show what would reduce the offense to negligent homicide or reduce the killing, in the absence of malice aforethought, to justifiable homicide. The third exception is that the fourth paragraph of the charge is too general. The fourth exception is against paragraph 5 upon the ground that it leaves the jury with no guide upon which to determine what was malice aforethought.

[10] In failing to amend the charge in response to the criticisms mentioned, it is believed that no reversible error was committed. To the minds of this court, none of the objections are tenable unless it be that relating to the absence of information given the jury touching the circumstances which would justify the killing or reduce the offense to negligent homicide. If such omission was a fault, it was not harmful, as there was no evidence before the jury either justifying or mitigating the offense. The sole theory upon which the jury would have been authorized to acquit was that of insanity.

The requested special charges Nos. 1 and 4 would, in effect, have instructed the jury that the burden of proof was upon the state upon the issue of insanity, and special charge No 3 sought but a repetition of that which was

in the main charge, namely, that the inquiry related to the insanity of the appellant at the very time of the homicide. The same is true of special charge No. 5. Special charge No. 6 in substance told the jury that it was not necessary that the appellant prove his insanity by a doctor. This but singled out a phase of the evidence upon which there was no necessity to charge. In refusing to read the special charges mentioned, the learned trial judge was not deemed to have committed error.

Special charge No. 2 was in the following terms:.

"The court further instructs the jury that if from all the evidence in the cause they believe or have a reasonable doubt that the defendant at the very time of the homicide labored under such delusion of fear, or of some delusion as to the existence of danger to himself or children surrounding him, caused by some unnatural and irrational belief of danger threatened him by some voodoo powders which he could not circumvent or prevent, and that acting under such an insane delusion he shot and killed the deceased to prevent harm to himself or children, and at the time he was incapable of determining what was a lawful or unlawful act, they will find him not guilty."

[11, 12] Touching the charge above quoted, it may be said that the court having instructed the jury to acquit the appellant if from all the evidence he was believed to be insane in the sense that he was unable to distinguish the right from wrong with reference to the act in question, there was no necessity to charge on a particular phase of insanity. See Leache v. State, 22 Tex. App. 279, 3 S. W. 539, 58 Am. Rep. 638; Webb v. State, 8 Tex. App. 115; Newman v. State, 99 Tex. Cr. R. 364, 269 S. W. 440; Roberts v. State, 89 Tex. Cr. R. 454, 231 S. W. 759. The evidence to the effect that the appellant believed that his wife had placed him under the influence of "voodoo," that she had designs upon his life, and that she had attempted to poison him, was admissible upon the issue of general insanity. Upon that issue the appellant had the benefit of the testimony relating to delusions, together with the other testimony adduced upon the subject of insanity, both before the jury and in the charge. If from all the facts the jury believed the appellant was insane in the legal sense at the time he killed his wife, he was entitled to an acquittal, and the jury was so instructed. If he believed that his wife designed to kill him and had administered "dope" for that purpose and was deranged upon that subject alone, he was not, under the facts presented, justified in taking her life. One who commits a crime while acting under an insane delusion is to be judged, so far as his criminal responsibility is concerned, precisely as if the facts which in his delusion he believes to be true were actually true. See Morris v. State, 96 Tex. Cr. R. 63, 255 S. W. 746; Ruling Case Law, vol. 14, p.

604, § 57; Boswell v. State, 63 Ala. 307, 35 Am. Rep. 20; Com. v. Rogers, 7 Metc. (Mass.) 500, 41 Am. Dec. 458; 37 L. R. A. 266. On the subject, we quote from Wharton on Homicide (3d Ed.) p. 801, as follows:

"But with reference to insane delusions the person laboring under a particular delusion must be considered in the same situation with relation to criminal responsibility as if the facts with respect to which the delusion existed were real, and criminal responsibility is relieved only when such facts would, if actually existing, have justified the acts and rendered it excusable."

In the present case, the appellant was not deemed a proper subject of confinement; nor was he the victim of any impairment or defect of mind which prevented his conducting the ordinary affairs incident to life. The jury found that he was not insane in the general sense.

[13] Complaint of the argument of state's counsel is made in Bill of Exceptions No. 25. From the recitals of the bill, it is made apparent that at the time the argument was made, no exceptions or objections were addressed to it. Counsel for the appellant had the stenographer report and transcribe the argument, and after the close of the trial selected such portions of it as he deemed transgressed the law of legitimate debate and embraced them in a bill of exceptions. The procedure adopted has been held inadequate to bring forward for review complaints of the argument of counsel. In the case of Harris v. State, 93 Tex. Cr. R. 552, 249 S. W. 489, it was said:

"It is conceived that the orderly procedure which must characterize a trial demands that the complaint that in his argument counsel is transcending legitimate bounds, should be addressed to the trial judge at the time so that he may determine its propriety and use his authority to counteract any injustice that may portend. It is fair that the counsel should be accorded occasion to himself withdraw any inaccurate or objectionable feature of his remarks to the jury. When the opposing counsel sits silent, he waives any argument of his adversary that can, in consonance with the orderly administration of justice, be waived. This court has found occasion in the case of Weige v. State, 81 Tex. Cr. R. 476 [196 S. W. 524] to express its views on the subject."

[14] Moreover, the trial judge, in explaining and qualifying the bill of exceptions in question, states that the remarks of state's counsel of which complaint is made were in response to the argument of appellant's counsel. As qualified, the argument, if improper (which is not here decided) would not authorize a reversal, but would come within the rule relating to invited error. See Baker v. State, 4 Tex. App. 229, and other precedents collated in Branch's Ann. Tex. P. C. § 364.

[15] A new trial was sought because one of the jurors could neither read nor write. One

of the jurors could read and write the English language in a very imperfect manner. The bill states that on the voir dire examination the judge asked the juror whether he could read and write the English language, and the juror answered "yes." In qualifying the bill, the judge states that he has no recollection of such inquiry or reply. Enumerating the challenges for cause, the statute reads:

"That he cannot read and write. This cause of challenge shall not be sustained when it appears to the court that the requisite number of jurors who are able to read and write cannot be found in the county." C. C. P. 1925, art. 616, subd. 14.

A similar question has been considered in several instances. See De Arman v. State, 80 Tex. Cr. R. 147, 189 S. W. 145; Lowe v. State, 88 Tex. Cr. R. 316, 226 S. W. 674; McCurley v. State, 107 Tex. Cr. R. 429, 296 S. W. 559; Guyon v. State, 89 Tex. Cr. R. 287, 230 S. W. 408; Yanez v. State, 6 Tex. App. 429, 32 Am. Rep. 591.

The bill does not show that the appellant or his counsel asked the juror any questions on his voir dire; nor does it show that either of them, at the time the juror was accepted, did not know to what extent he was able to read and write the English language. It does appear from the bill that the juror knew the appellant's counsel and that he had previously served on juries, asserting that he could read and write, not deeming it necessary to state the extent of his capacity in that particular. The opinion is expressed that the bill in question fails to show that in overruling the motion for new trial prejudicial error was committed.

The judgment is affirmed.

#### On Motion for Rehearing.

HAWKINS, J. In his motion for rehearing appellant challenges the correctness of our conclusions in a number of particulars. The original opinion will disclose that every contention made by appellant on original submission had that painstaking consideration which the severity of the penalty demanded. An examination of appellant's motion leads to no change in the conclusions heretofore expressed. We perceive no occasion for writing further upon the questions again urged by appellant.

The motion for rehearing is overruled.