## J. W. MERRITT v. THE STATE.

No. 1824. Decided March 27, 1899.

**1. Murder—Cross-Examination of Witness.**

On a trial for murder, where a witness has testified that defendant shot deceased because he was laboring under the delusion that deceased was at the head of a mob which was about to take his life, it was competent on cross-examination to ask the witness if defendant had not said "he was afraid of a mob, because he said he would not work, and because of his cruel treatment of his family." Such testimony would tend to rebut the defense of insane delusion as to mob violence, and was admissible.

**2. Improper Question to Witness, Harmless, When.**

Where the court refuses to permit a witness to answer a question because improper, and admonishes the jury not to be misled or prejudiced by the question, the mere fact that the question was asked becomes harmless error.

**3. Same.**

Even if it be conceded that the cross-examination of a witness is improper, it will not constitute reversible error where it was as to matter entirely of an immaterial character.

**4. Wife as Witness—Cross-Examination.**

Where the wife, as a witness for her husband, on direct examination has testified to matters relating to serious trouble she at one time had with her husband, and which was caused by deceased, and that deceased had tried to get her to quit her husband; Held, legitimate to cross-examine her as to a divorce suit she had instituted growing out of said troubles, and the grounds alleged by her in her petition for divorce,—the said cross-examination being an elucidation of her examination in chief.

**5. Self-Serving Declarations of Defendant.**

On a trial for murder the declarations of defendant to third parties, a short time before the killing, as to what his wife told him with regard to insults offered her by deceased, were self-serving and inadmissible as evidence in his behalf.

**6. Error in Exclusion of Evidence, Harmless, When.**

Where the verdict of the jury shows that they fully considered evidence as to certain facts in connection with the other testimony in the case, the exclusion of direct evidence as to such facts will be held harmless error.

**7. Insanity—Evidence.**

When witnesses are shown to have known defendant well and had been living near him for several years, but had not spoken to him for a year or so prior to the homicide, this latter fact did not disqualify them from testifying as to his sanity.

**8. Witness—Examination of.**

On a trial for murder, where a witness for the State, on cross-examination, stated that about two years before the killing defendant's wife had told her that deceased had insulted her, whereupon the State's counsel asked her, "Did I not talk to you this morning, and did I not ask you if Mrs. M. had ever told you of the first insults, and did you not tell me you had never heard of it?" and the witness answered, "Coun-

sel had not asked me about the insults," whereupon the inquiry was stopped and no effort was made to impeach the witness as to the matter; Held, no error is shown.

9. **Insanity—Delusions—Charge of Court.**

On a trial for murder, where the evidence tended to show that the killing was the result of insane delusions of defendant with regard to mob violence, it was proper for the court to charge on insanity generally and then on delirium, and apply the law to the facts of the particular delusion which the testimony tended to show affected the defendant.

APPEAL from the District Court of Parker.    Tried below before Hon. J. W. PATTERSON.

Appeal from a conviction for manslaughter; penalty, four years imprisonment in the penitentiary.

This is the second appeal in this case (see Merritt v. State, 39 Texas Criminal Reports, 70), and the facts on this appeal being in the main the same as were presented on the former appeal, renders a further statement unnecessary.

*Harry W. Kuteman,* for appellant.

*Albert Stevenson* and *Robt. A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of four years, and he prosecutes this appeal.

This case was before this court at a former term, and was reversed on account of the improper admission of certain testimony, and the exclusion of certain competent testimony offered by appellant, and also because the charge of the court was not full enough when applied to the facts. The statement of the case is about the same as on the former trial, to which reference is here made.    See Merritt v. State, 39 Texas Crim. Rep., 70.    The theory of the State was that the homicide was an unprovoked murder, and the testimony on the part of the State tended to show that a grudge of some years' standing existed between appellant and deceased; that a short time before the homicide appellant had deceased placed under a peace bond.    On the day of the homicide it appears that the justice of the peace proposed to take some procedure in said matter of the peace bond, and that deceased, who lived some five or six miles from the town, and one of his neighbors, came into the town of Millsap, and about 9 or 10 o'clock the homicide took place.    Deceased went across the street to the blacksmith shop of one Bean.    Appellant had preceded him to that place, and, as deceased came into the door, appellant shot him down.    Deceased, at the time, made no demonstration of a hostile character.    The theory of appellant was that, at the most, the killing could only be manslaughter, because of insults to the wife of appellant made by deceased, and which had been communicated to him a day or two before the homicide; and, furthermore, that appellant was guilty of no offense, because he was laboring under an insane delusion at the time

that the deceased, Brown, was at the head of a mob, or himself consti-
tuted a mob, and that he was about to mob appellant and take his life.

The court charged on murder in the second degree (appellant having
previously been acquitted of murder in the first degree), and gave a
charge on manslaughter, and also a charge in favor of defendant, on the
theory of his insane delusion.

The district attorney asked of certain witnesses a number of questions,
of which the following is a fair example: "When the witness Tom Wil-
liams was on the stand, the defense proved by said witness that defendant
was not in his right mind, and was laboring under the belief that a mob
was after him for the purpose of killing him; that deceased was at the
head of said mob. The State then asked the witness the following ques-
tion: 'Did not defendant say he was afraid of a mob, because he said
he would not work, and because of his cruel treatment of his family?'
Defendant objected to this, because irrelevant and asked for the purpose
of prejudicing defendant. Witness replied that he did not know. De-
fendant reserved his bill of exceptions to the asking of the question." To
some of the questions on this line the court sustained the objection of
defendant, but he excepted because of the action of the district attorney
in asking the question, claiming that said question was clearly improper
and incompetent; that the district attorney knew that it was, and asked
the same merely for the purpose of prejudicing appellant, and making
the jury believe that appellant was cruel to his family, etc. These ex-
ceptions were reserved in his bills numbers 1, 2, 3, 4, 6, 7, and 8. The
court appears to have excluded this character of testimony, on the ground
that, under the former decision of this case, such testimony was held not
admissible. We said on the former appeal of this case that the testimony
of McCall, to the effect that some seven or eight years before the homicide
appellant's wife had made complaint before him (as a justice of the
peace) charging her husband (appellant) with making an assault on
her, was inadmissible, and we think said testimony was clearly inadmis-
sible. It was hearsay, and could only have been used under certain con-
tingencies,—possibly to impeach the wife. But we do not understand
the testimony here offered and excluded to have been of that character.
In this case, appellant's principal defense was that he was not responsible
for his act because at the time he was laboring under the insane delusion
that a mob was after him and about to kill him, led by Brown, the de-
ceased. Now, any testimony that would tend to show that this mob busi-
ness was not a delusion, but was based on a reality, and that appellant
acted, not on a mere delusion, but certain facts, we believe was admissible,
as tending to rebut his theory of an insane delusion. But the witnesses
were not permitted to answer said question, or, if they were permitted,
they answered negatively; so we fail to see what possible prejudice ac-
crued to appellant. The court not only rejected this testimony, but, in
connection with the questions, admonished the jury not to be misled or
prejudiced against defendant on account of any such questions.

The defendant introduced one J. R. Holyfield, and proved by him,

how defendant obtained certain White-Cap notices, and the witness was examined on no other subject. On cross-examination the State asked him if he did not, on a former trial, testify that he thought the defendant had more sense than he had. The defendant objected to this on the ground that it was hearsay, and was wholly immaterial and irrelevant. The objection was overruled, and the witness stated that he had so testified, and that he now stated that defendant had as much sense as he (witness) had. So far as this testimony is concerned, it can not be regarded as legitimate cross-examination, as defendant had not put said witness on the stand to prove appellant's insanity, and had asked him no questions tending in that direction; but, if the State so desired, it was competent for it to use the witness, at the proper time, to prove the mental condition of appellant. The question, as shown by the bill of exceptions, indicates that a reference was made to the former testimony of the witness merely for the purpose of refreshing his memory, and witness then stated that he considered appellant as having as much sense as he (witness) had. It may be that this was not a proper test of the sanity of appellant, but we do not understand the objection to be made on this ground. Even if it be conceded that the question and the answer were improper, we regard it as of an immaterial character.

Defendant placed his wife, Mrs. Susan Merritt, on the stand, and among other things, in her direct examination she testified that Brown, the deceased, had been the cause of trouble between herself and husband, and that one Mun Edwards had told her husband a falsehood on her, and had caused defendant to believe she had been too intimate with another man; that, acting on such information, her husband had charged her with being untrue to him, and that deceased had tried to get her to quit her husband on account of said charge; that, after this, she learned that Edwards had told her husband a story that caused him to make the charge, and that she informed her husband; and that they became reconciled to each other, and she fixed the date of said reconciliation by a certain transaction in court. And, on cross-examination by the State, she was asked by counsel if she did not, after the time of said transaction in court, come to Weatherford and file a suit against her husband for divorce, and if she did not tell her lawyer, as a ground for divorce, that defendant had called her a whore and a bitch, and if she did not so state in her petition; to which questions defendant objected, because the same were improper and immaterial, and calculated to prejudice defendant, and because the same was hearsay. The court overruled the objections, and the witness answered that she did bring a suit for divorce, and that she did tell her lawyer that defendant had called her a whore; that this was before she had heard that Mun Edwards had told her husband a story and had deceived him; and that, upon learning these facts, she had the suit dismissed. It occurs to us that this was legitimate in the cross-examination of said witness. Her testimony in chief, as we understand it, was with reference to the divorce suit, and she was cross-examined by the State with reference to that same suit,

as to the ground which she assigned for the divorce.  Her cross-examination elucidates her examination in chief.  She states that she did bring suit for divorce on the ground that her husband had called her a whore, and that she also informed her lawyer; that, when she learned that Mun Edwards had told her husband a story in regard to said matter, she dismissed the suit.  There was no error in regard to this testimony.

Nor was there any error in the action of the court in refusing to permit appellant to prove by the witness White what defendant told him on Wednesday evening, prior to the killing on Friday, as to what his wife had told him on that same evening, in regard to the deceased (Brown) insulting her.  And the same character of testimony was offered to be proved by the witness Tom Williams, except that it was offered to be proved by him that appellant made ·the statement to him on Friday morning.  This testimony was objected to by the State on the ground that it was self-serving.  This is not like the case of Jones v. State, 38 Texas Criminal Reports, 87.  In that case Jones had told Kendall what his wife had told him about Veal's conduct towards her.  Kendall stated that he did not believe it, and would not, unless he heard it from Mrs. Jones' own lips.  Shortly afterwards Kendall saw Mrs. Jones, and she told him of the circumstances of Veal having raped her before the marriage with appellant, and of the subsequent visits to her as stated.  A few hours after this Kendall again met defendant, and told him that he had seen his wife, and that it was true as he (Jones) had stated to him in regard to Veal's conduct towards his wife.  This testimony was admitted to rebut an alleged fabricated defense.  This was a direct report by Kendall to Jones of what Mrs. Jones had told him.  But in this case neither White nor Williams had ever talked with Mrs. Merritt, and did not propose to testify as to what she had stated about it, but merely to state what the defendant had said about it some time afterwards.  And again, in the Jones case, the jury discredited the testimony of Mrs. Jones tending to show manslaughter, finding Jones guilty of murder in the second degree.  In this case the jury evidently gave credit to the testimony of Mrs. Merritt and other witnesses, who testified to the communication of said insults to appellant prior to the homicide, as they found appellant guilty of manslaughter; and, as we view the record, they could have found him guilty of manslaughter upon no other theory except on the ground of insults towards his wife.  So that, even if it be conceded that the action of the court was erroneous, it did not prejudice appellant.

Appellant reserved the following bill of exceptions to the testimony of the witnesses E. P. Yell and R. C. Burnett: "The State's witness E. P. Yell testified that he had known defendant for many years; that he had not spoken to defendant in five years.  The State then asked him to state whether or not, in his opinion, defendant was insane, to which defendant excepted, because the witness was not qualified.  The court overruled the objection, and the witness gave his opinion that the defend-

ant was sane. The State then proved by witness R. C. Burnett that he had known defendant since 1883; that during that time he lived near him for most of the time; that he had not spoken to him but once in three years before the killing of Brown. The State then asked said witness for his opinion of the sanity or insanity of defendant, to which defendant again objected that the witness was not qualified. The court overruled the objection, and the witness gave his opinion that defendant was sane." The court explains this bill as follows: "This bill is signed with the statement that witness Yell stated that he knew defendant well, lived near him for twelve years, and had frequent talks with him during the first seven years of their acquaintance, and had met him frequently for the last five years, but had not spoken to him; and witness Burnett stated that, up to three years before the killing, he frequently talked to defendant, and had frequently seen him in the last three years, but had not spoken to him in three years next before the killing." It does not occur to us that, because the witness and defendant had not been on speaking terms for the last three years, this disqualified the witness from testifying as to his sanity or insanity. The bill does not show whether or not these witnesses were experts, nor does it show that they were not thoroughly conversant with appellant's conduct and his acts, or that they did not detail his conduct and acts. The objection seems to be merely that they had not spoken to defendant for a considerable length of time prior to the homicide, and that, therefore, they were not qualified to testify as to his sanity. We do not think this proposition tenable.

There is nothing in appellant's contention as to the examination of the witness Mrs. Estell by the State. It appears that the State introduced Mrs. Estell, and examined her on the subject of the defendant's mental condition. On the cross-examination the defendant asked her if she had ever heard of deceased insulting Mrs. Merritt, to which witness replied that Mrs. Merritt, about two years ago, while her husband was in Alabama, told her (witness) that Brown had insulted her; whereupon the State's counsel asked said witness the following question: "Did I not talk to you this morning, and did I not ask you if Mrs. Merritt had ever told you of the first insults, and did you not tell me you had never heard of it?" to which defendant objected, because it was hearsay and irrelevant. The court overruled the objections, and the witness answered "that counsel had not asked me about the insults." The inquiry appears to have stopped here. There was no attempt at impeachment, and so we do not see any error in this regard.

Appellant insists that the court erred in his charge on insanity. He insists that there was no claim that the defendant was insane, except on the particular subject of Brown and the mob; that he was insane only on this subject, and that the court was not authorized to charge on insanity generally; that much of the court's charge is a repetition, and that it continually reminded the jury that the burden of establishing the insanity is on the defendant; that such repetition was calculated to improperly influence the jury. We have examined the charge carefully,

and, in our opinion, it is not subject to the criticism of appellant. We think it was proper for the court to charge, as was done, on insanity generally, and then on delusion, and then apply the law to the facts, as was done on the particular delusion which the testimony tended to show affected appellant. We do not believe that the charge was misleading or confusing, but that it suggested clearly to the jury the question of insanity, as developed by the testimony, and instructed the jury appropriately in regard to the delusion under which it was claimed that he slew deceased. The jury did not adopt the theory of the appellant that he shot deceased because he believed that he was leader of a mob that was then after him for the purpose of taking his life, or that he was the mob himself, but, on the other hand, they appear to have adopted the theory of the State that appellant acted intelligently in taking the life of deceased; that he believed that deceased was instrumental in interfering with his family relations and advising his wife against him; that he had made indecent proposals to his wife on more than one occasion, and that he repeated said insulting proposals to her on Wednesday prior to Friday, the day of the homicide; that his wife informed him of said insults; that his passion became aroused on that account, and on his first meeting with deceased slew him, because he believed he had insulted his wife. Of course, appellant introduced a great deal of testimony tending to show his insane delusion; but the State, on the other hand, introduced contradictory testimony, and, in addition to this, showed that appellant acted intelligently, and on a strong motive to reduce the killing to manslaughter. We believe that the evidence supports the verdict of the jury, and in such case it is not our province to disturb it. The judgment is accordingly affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.