To authorize defendant's conviction of bigamy, under Pen. Code 1911, art. 481, providing that if any person who has a former wife or husband living shall marry another such person shall be punished, it was necessary for the state to prove that when defendant married he had been previously legally married to another woman, who was living when the offense was committed.

2. BIGAMY ⊕11 — GUILT — SUFFICIENCY OF EVIDENCE.

In a prosecution for bigamy, evidence held insufficient to sustain conviction, in that it failed to establish that defendant, who married in Texas, was the same person who had married previously in Michigan, and in that it failed to show that at the time of his second marriage, if it was such, defendant's first wife was living.

Appeal from Criminal District Court, Dallas County; Robt. B. Seay, Judge.

Kenneth Rogers, alias Mark Morton, was convicted of bigamy, and he appeals. Judgment reversed, and cause remanded.

Oscar H. Calvert, of Dallas, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. [1, 2] Appellant's conviction was for the offense of bigamy. It was shown that under the name of Morton he, about the 12th day of February, 1918, was married in Dallas county, Tex., to Gene Crockett. The state introduced a marriage certificate showing that on the 19th day of July, 1913, Kenneth C. Rogers was married to Anna L. Boucher, in the State of Michigan. A witness testified that appellant some time prior to the last marriage admitted that his name was not Morton, but that his name was Kenneth Rogers; that he assumed that name of Morton because he could not get along with his brothers. This is the entire evidence as shown by the statement of facts.

The statute defining bigamy (article 481) contains the following: "If any person who has a former wife or husband living shall marry another in this state, such person shall be punished," etc. To authorize the conviction of appellant it was necessary that the state prove that at the time he married Miss Crockett in Dallas he had been previously legally married to another woman who was living at the time the offense was committed. Goad v. State, 51 Tex. Cr. R. 393, 102 S. W. 121. In the absence of some further proof of identity than that developed upon the trial, we think the evidence is insufficient to show that appellant is the person who was married in Michigan as shown by the marriage certificate mentioned. That certificate shows that in 1913 Kenneth C. Rogers married Anna L. Boucher. There is no further evidence of the identity of appellant with the bridegroom mentioned in the certificate than the fact that a witness testified that while they were drinking together appellant told him that his name was Kenneth Rogers. No fact or circumstance was introduced to further show his identity with the person named in the certificate. The evidence of identity was stronger in the case of Goad v. State, supra, and was there held insufficient. The statement of facts brought up by the record failing to establish by sufficient evidence that the appellant is the same person who married in the state of Michigan in 1913, the evidence is insufficient to sustain the conviction. It is further insufficient in failing to show that at the time appellant married in Dallas his former wife was living.

The procedure complained of in bill of exception No. 1 and the argument referred to in bill of exception No. 6 are matters that will doubtless not occur upon another trial and their discussion is unnecessary. The other bills present no error.

Because the evidence is insufficient, the judgment of the lower court is reversed, and the cause remanded.

---

MIRICK v. STATE. (No. 5017.)

(Court of Criminal Appeals of Texas. May 22, 1918. Rehearing Denied June 19, 1918.)

1. INDICTMENT AND INFORMATION ⊕44 — LOST INDICTMENT—SUBSTITUTION OF COPY.

Where there is no intimation in the record that a copy substituted for a lost indictment was not a substantial copy of the original, no error is shown by the substitution by order of the court on written motion, under Vernon's Ann. Code Cr. Proc. 1916, art. 482, relating to lost indictments.

2. CRIMINAL LAW ⊕132—CHANGE OF VENUE —TIME.

An application for change of venue on the ground of prejudice after nine jurors had been selected was too late; the state having contested the motion, denying everything therein, and controverting the knowledge of the compurgators, under Vernon's Ann. Code Cr. Proc. 1916, art. 630, relating to change of venue.

3. CRIMINAL LAW ⊕1092(4)—MATTERS REVIEWABLE — BILLS OF EXCEPTIONS — TIME FOR FILING.

Under Vernon's Ann. Code Cr. Proc. 1916, art. 845, relating to time for filing of bills of exception, a bill of exception filed more than two months after the court had adjourned for the term cannot be considered.

4. HABEAS CORPUS ⊕50 — BAIL — TIME FOR APPLICATION.

There was no error in refusing accused's application, made during the trial, for writ of habeas corpus, so as to try to get bail during the further pendency of the trial; such application coming too late.

5. CRIMINAL LAW ⊕1091(5)—BILL OF EXCEPTIONS—MATTERS REVIEWABLE.

A bill complaining of the exclusion of testimony, which does not state what the objections of the state were, nor on what ground the court refused to admit the evidence, cannot be intelligently reviewed.

6. WITNESSES ⊕388(2)—IMPEACHMENT—LAYING PREDICATE.

A witness cannot be impeached by showing inconsistent statements unless the proper predicate is laid.

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. CRIMINAL LAW ⬳1091(3)—MATTERS RE-VIEWABLE—BILLS OF EXCEPTION.**

A bill in a rape case complaining that on cross-examination defendant was asked if his wife did not slap a couple of little girls on the street because of his improper conduct towards them, that he objected because it was immaterial, irrelevant, and calculated only to prejudice his rights, and that it was overruled, was too meager to require that it be passed on.

**8. CRIMINAL LAW ⬳1170½(2) — HARMLESS ERROR—EVIDENCE.**

In prosecution for rape, where defendant had testified that his wife was visiting in another state at the time because her mother was sick, overruling an objection to a question on cross-examination as to whether defendant's wife had not slapped a couple of little girls because of his improper conduct toward them was harmless, where his answer was that he did not know of it.

**9. RAPE ⬳7 — CARNAL KNOWLEDGE — EX-TENT OF PENETRATION.**

To constitute rape, it is unnecessary that the penetration should be perfect, nor that there should be an entering of the vagina or rupture of the hymen; the entering of the vulva or labia being sufficient.

**10. CRIMINAL LAW ⬳1170(1) — HARMLESS ERROR—EVIDENCE.**

In rape case, where the testimony unquestionably showed penetration to the extent required by law, exclusion of testimony of a physician that the hymen would have been ruptured if defendant had had intercourse with the complaining witness was harmless.

**11. CRIMINAL LAW ⬳366(1) — EVIDENCE — RAPE.**

In rape case, witnesses could testify that they heard the girl, who was locked in defendant's room, cry out: "Don't do that! let me alone! I will tell mamma. I want to go home."

**12. CRIMINAL LAW ⬳1169(2) — HARMLESS ERROR—EVIDENCE.**

Defendant cannot complain of admission of testimony, where another witness had testified to substantially the same thing without objection.

**13. CRIMINAL LAW ⬳364(3)—RES GESTÆ.**

In a rape case, an exclamation, "My God!" made by defendant when witnesses broke into room where he had the girl, was admissible as res gestæ.

Appeal from Criminal District Court, Tarrant County; George E. Hosey, Judge.

J. E. Mirick was convicted of rape, and he appeals. Affirmed.

R. S. Phillips, of Ft. Worth, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

PRENDERGAST, J. Appellant was convicted of rape of Nellie Pannell, a little cripple girl 11 years old, and his punishment assessed at 99 years in the penitentiary. The evidence was amply sufficient to sustain the conviction. The court's charge, together with those specially requested by appellant, which were given, fairly, fully, and aptly submitted every question necessary and proper to be submitted. There was no objection to the charge.

[1] The rape was shown to have been committed on the night of December 25, 1917. The indictment was preferred on December 27th. Appellant was then under arrest and confined on the charge. Doubtless, as the statute requires, he was duly served with a copy of the indictment. The trial was set for January 2, 1918. A special venire was duly ordered and summoned to appear on that date and were then in attendance. The record shows that some 20 minutes before the case was called for trial the county attorney discovered that the indictment had been lost. He thereupon filed a written motion so stating, and attached thereto what he alleged was a substantial copy of the original indictment. The court then made an order to the effect that the county attorney had suggested the loss of the indictment, and that the court was of the opinion that the state was entitled to, and granted leave to, substitute the indictment. It seems at that time the court did not enter on his docket that the original was in fact substituted, but later in the minutes of the court had entered an order to that effect. It appears that appellant and his attorneys were present when all these proceedings occurred. Appellant has three bills of exception on the subject. He claimed at the time that he had the right to contest such substitution and that he desired to do so; but he did not then, nor at any other time, make any such contest. From the record there can be no doubt but the substituted copy was in truth and in fact a true copy of the lost original. It was held by this court in Bowers v. State, 45 Tex. Cr. R. 188, 75 S. W. 299, that the only contest which can be made when a lost indictment is attempted to be substituted is that such substitute is not a substantial copy of the original. As stated, appellant only a few days before the loss and attempted substitution of the indictment had been served with a true copy thereof. He doubtless still had that. But whether he did or not, there is no intimation in this record that the substitute was not a true and correct and substantial copy of the original. The proceedings in making this substitution were substantially in accordance with the statute and decisions thereunder. 2 Vernon's Crim. Stats. p. 249; 1 Branch's Ann. P. C. p. 268.

[2, 3] When the case was called for trial January 2d, the state announced ready. Appellant made a motion for a continuance, which was overruled. Thereupon began the selection of the jury from the special venire. The trial proceeded until some time next day. After nine jurors had been selected and sworn appellant then made a motion for a change of venue, claiming there was so great a prejudice against him that he could not obtain a fair and impartial trial. The state filed a demurrer to this on the ground, among others, that the application came too late, and the state further contested the said motion, denying everything therein, and con-

troverted the knowledge of the compurgators. The court sustained the state and overruled the motion for change of venue. There was no error in the action of the court. 2 Vernon's Crim. Stats. p. 339; 1 Branch's Ann. P. C. p. 178. Besides, the bill presenting this matter was not filed until more than two months after the court had adjourned for the term. The statute and decisions require that such bill shall be filed during term time; otherwise this court is prohibited from reviewing the question. 2 Vernon's Crim. Stats. p. 831.

[4] Some time later during the trial appellant presented to the trial judge an application for a writ of habeas corpus, so as to try to get bail during the further pendency of the trial. This was clearly too late, and the court did not err in refusing to grant the application at the time. Muldrew v. State, 73 Tex. Cr. R. 465, 166 S. W. 156, and authorities there cited.

The little girl, Nellie, testified in effect that shortly prior to the night the rape was alleged to have been committed the appellant took her upon his lap, showed her his privates, and asked her something nasty, and said, "Let's have a bit;" and on another occasion tried to pull up her dress. She did not and could not testify that appellant had sexual intercourse with her on said Christmas night because she swore, and the testimony of other witnesses and the physical facts unquestionably showed, that that night after appellant had enticed and inveigled her into his room and locked the doors he gave her intoxicating liquor, certainly, and perhaps also dope, which rendered her unconscious, and she remained in a stupor and in that condition until sometime about the middle of the next day. The testimony of other witnesses and the physical facts practically demonstrated that about 12 o'clock, or just after, Christmas night, appellant ravished her. Appellant, in cross-examination of her, or otherwise, in no way attempted to lay a predicate to impeach her or any of her testimony. He, however, introduced a Mrs. Stein, who testified for him that two or three days after appellant's alleged rape of the little girl, she (the witness) had a talk with Nellie with reference to what appellant had done and said to her, and that in that conversation Nellie said that the appellant never mistreated her. Appellant has a bill complaining that upon the objections of the state Mrs. Stein was not permitted to answer further that on said occasion Nellie had stated to her that appellant never had said anything ugly to her; that he always conducted himself properly before her; never promised her anything out of the way; and that he never showed his private parts and never did take her upon his lap and say ugly things to her.

[5, 6] The state objects to the consideration of the bill presenting this subject because,

among other things, it does not state what the objections of the state were, nor on what ground the court refused to permit the witness to so testify. The state's objections to the bill are well founded. 2 Vernon Cr. Stats. p. 542, note 29. This court cannot intelligently review the ruling of the court because of said defects. Many reasons could have been given, and probably were, why this claimed testimony of this witness was inadmissible. One alone would have been sufficient, and that is, that no predicate had been laid to impeach Nellie on any of these grounds, and the bill therefore presents no error. It is well established that before a witness can be impeached the proper predicate must be laid, and unless it is laid the impeaching testimony is inadmissible. 1 Branch's Ann. P. C. § 179, where some of the cases are cited.

Appellant himself testified. In his direct testimony, among other things, he testified, that he had been married for 9 years; that he and his wife had no children and that for many months prior to this Christmas night he had had many little girls, ranging in ages from perhaps 6 or 8 to 12 or 13 years in his room frequently; he never testified that he ever had at any time any boy child in his room; it was exclusively little girls, and among them was Nellie; that he meant and intended no harm or improper relations with any of them at any time; that he and his wife were living together as man and wife, but that she was then with her mother, it seems, in some other state, and had been since June, 1916, and that the occasion for her going there at that time was that her mother was then sick, and that is why she went there.

[7, 8] Appellant has a very meager bill which complained that while he was testifying, on cross-examination by the state, he was asked if a few months before this alleged offense his wife did not slap a couple of little girls while they were walking along the street on account of his improper conduct towards them; that he objected to this question and answer because it was immaterial, irrelevant, and calculated only to prejudice his rights before the jury; that the court overruled his objections and he answered that he did not know of it if it was true. This is in substance the whole of the bill. In allowing it the court qualified it by stating that he had testified upon direct examination:

"I am married. My wife is with her mother at present. We are living together as man and wife and my wife is off on a visit. Her mother was sick and that was why she went home."

And the above cross-examination was with reference to whether or not they were living together as husband and wife and whether or not they were separated and the cause of the wife leaving home. This bill is too meager to require that it be passed upon. But even if it could be, under the circumstances

of this case it showed no reversible error. His answer would be beneficial and not harmful to him and would not authorize a reversal. Phillips v. State, 59 Tex. Cr. R. 534, 128 S. W. 1100; Huggins v. State, 60 Tex. Cr. R. 214, 131 S. W. 596; Merritt v. State, 40 Tex. Cr. R. 359, 50 S. W. 384; Smith v. State, 39 Tex. Cr. R. 320, 45 S. W. 1013; Hart v. State, 57 Tex. Cr. R. 21, 121 S. W. 508; Warthan v. State, 41 Tex. Cr. R. 387, 55 S. W. 55; Baker v. State, 45 Tex. Cr. R. 396, 77 S. W. 618, and many other cases.

[9, 10] In another bill is alleged that in his cross-examination of Dr. Neece, an expert, he asked him whether or not a small girl, the size of Nellie, having sexual intercourse with a man the size of appellant, if it was not a fact that in such relations the hymen would be ruptured. The bill then further recites that the state objected to said question and answer, and the court sustained the objections and would not permit the witness to answer. What objections the state made is in no way given. The bill is incomplete without this. It may have been that the testimony was inadmissible on the ground urged by the state. We cannot tell about this from his bill. He claims in the bill that if the witness had been permitted to answer he would have testified that under such conditions the hymen would have been ruptured. Presumably appellant's contention was that in order to rape this little girl it was necessary for appellant's sexual organ to have fully and completely entered her vagina and ruptured her hymen in order to show penetration. This under the law was not necessary. The law in this state is as stated in 33 Cyc. 1422:

"The slightest penetration of the body of the female by the sexual organ of the male is sufficient; it is unnecessary that the penetration should be perfect; nor that there should be an entering of the vagina or rupture of the hymen; the entering of the vulva or labia is sufficient."

To the same effect is 1 Wharton's Crim. Law (11th Ed.) § 697; 10 Encyc. of Ev. p. 580; 2 Bishop's New Crim. Law, § 1132. This court has expressly held the law to be as stated by the authorities above. Kenney v. State, 79 S. W. 817, 65 L. R. A. 316; Rodgers v. State, 30 Tex. App. 510, 17 S. W. 1077; Fitzgerald v. State, 20 Tex. App. 294–296. The testimony by the state unquestionably showed penetration to the extent required by law. Under the law and the unquestioned facts presented in this case, appellant's bill does not present reversible error even if it could be considered.

[11-13] The court did not err in permitting two of the witnesses to testify in substance that just after 12 o'clock that Christmas night when appellant had the little girl locked in his room they heard her cry out: "Don't do that! let me alone! I will tell 'mamma. I want to go home." Besides, another witness testified to substantially the same thing to which there was no objection. Wagner v. State, 53 Tex. Cr. R. 306, 109 S. W. 169, and many other cases. Neither did the court err in permitting two witnesses to testify that when they broke into the room where appellant had this little girl locked in he exclaimed, "My God." That was res gestæ and admissible.

No other questions are raised which require any discussion. None of them present reversible error.

The judgment will therefore be affirmed.