Oliver J. MILLER, Sr., Appellant,

v.

The STATE of Texas.

No. 2–95–432–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 27, 1997.

Jack V. Strickland, Fort Worth, for Appellant.

Charles Mallin, Fort Worth, for State.

Before CAYCE, C.J., and HOLMAN and H. TOD WEAVER, (Retired), Sitting by Assignment, JJ.

## OPINION

HOLMAN, Justice.

Appellant Oliver Miller, Sr. was indicted for the murder of Emmett Allen. The jury rejected Appellant's insanity plea, declined to find that his actions were justified under the theory of self-defense, found him guilty of murder, and assessed punishment at thirty years in prison. The appeal presents two points: (1) the trial court erred by denying Appellant's requested charge on "insane delusion" and (2) the trial court erred by denying Appellant's right to confront a State's witness by releasing the witness over Appellant's objection during the punishment phase of the trial. Finding no error, we affirm.

### The Shooting

The sufficiency of the evidence is unchallenged. The body of Emmett Allen was discovered in his business office on August 9, 1994. Three days later, Appellant went to the studios of a local television station and confessed that he had shot Mr. Allen three times because Mr. Allen was stealing his property. Appellant also claimed, and later testified at the trial, that in order to steal the property, Mr. Allen was conspiring with members of the federal government, members of the Tarrant County government, attorneys, bankers, insurance companies, utility companies, and even members of Appellant's family. He testified that he armed himself by wedging a Colt .45 into his belt, went to Mr. Allen's office for a confrontation, and Mr. Allen became hostile as they talked. Appellant told the jury that Mr. Allen had been standing, but because Mr. Allen moved toward a desk where Appellant suspected a gun might be kept, he pushed Mr. Allen down, drew his pistol, and shot him. Appellant told the jury that he acted in self-defense although he knew it was wrong to shoot someone with a .45 caliber pistol and that such conduct could kill a person.

### I. REQUESTED CHARGE ON INSANE DELUSION

#### Evidence of Mental Disease

The State concedes that at the time of the shooting, Appellant was suffering from a ser-

ious mental disease known as Delusional Disorder, which was the opinion of the three experts who testified at the trial. An affirmative defense to prosecution is available to a person who commits a criminal offense without knowing that the conduct is wrong because of a severe mental disease or defect. *See* TEX.PENAL CODE ANN. § 8.01 (Vernon 1994). Although Appellant told the jury that he knew it was wrong to shoot a person with a .45 caliber gun and that shooting could kill a person, defense experts Dr. Mark Cunningham and Dr. Swen Helge opined that because of the disease, Appellant did not understand that killing Mr. Allen was wrong. Dr. Ann Turbeville, the court-appointed, disinterested expert, opined that notwithstanding Appellant's mental illness, he knew it was wrong to shoot Mr. Allen.

### Claim of Self-Defense

Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence. *Reese v. State,* 877 S.W.2d 328, 333 (Tex.Crim.App.1994); *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App. 1987). However, a trial court's refusal to submit a defendant's specifically requested instruction on a defensive issue is not reversible error if the court's charge contains the essential substance of the defensive issues raised by the evidence and adequately protects the defendant's rights. *Aranda v. State,* 506 S.W.2d 221, 226 (Tex.Crim.App. 1974); *Conaway v. State,* 663 S.W.2d 53, 56 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd).

Evidence showing that a homicide defendant was reasonably led by the victim's own words or overt acts to believe that the victim was about to attack the defendant, is generally enough to raise the issue of whether the defendant was entitled to use deadly force in self-defense against the victim. *See* TEX.PENAL CODE ANN. §§ 9.31, 9.32 (Vernon 1994 & Supp.1997); *Halbert v. State,* 881 S.W.2d 121, 125 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Because the truthfulness and reasonableness of the defendant's belief in that situation is a question of fact for the jury to decide, that defendant would be entitled to a *self-defense* instruction. *Id.*

The charge in this case included a self-defense instruction.

The charge also instructed the jurors to find Appellant not guilty if they believed from a preponderance of the evidence that at the time he shot Emmett Allen, a severe mental disease or defect kept Appellant from knowing that his conduct was *wrong.* Appellant wanted the court to further instruct the jurors to find him not guilty if they believed from a preponderance of the evidence that:

> [b]ecause as a result of his being insane ... [Appellant] was suffering from an insane delusion as to the facts then existing, which caused [Appellant] to believe that Emmett Allen was participating in a conspiracy against him, had committed a theft of his property, and *presented an apparent danger to him of death or serious bodily injury* .... [Emphasis added.]

When addressing insane delusion as a defense, Texas cases have held that one who commits a crime while acting under an insane delusion may find relief from criminal responsibility only to the extent that the delusional facts would have justified or excused the criminal offense if those facts had been true rather than delusion. *See Coffee v. State,* 148 Tex.Crim. 71, 184 S.W.2d 278, 280 (Tex.Crim.App.1944); *Alexander v. State,* 8 S.W.2d 176, 181 (Tex.Crim.App.1928); *Merritt v. State,* 40 Tex.Crim. 359, 50 S.W. 384, 387–88 (1899) [hereinafter *Merritt I*]; *Merritt v. State,* 39 Tex.Crim. 70, 45 S.W. 21, 22–23 (1898) [hereinafter *Merritt II* ]; *Conaway,* 663 S.W.2d at 55. But the record contains no evidence that Mr. Allen said any words indicating that he was going to attack Appellant, nor is there evidence that Mr. Allen made an overt attack. Significantly, if Appellant had not suffered from a disease known as insane delusion, the singular fact that he merely *believed* Mr. Allen would attack him would not be sufficient to entitle Appellant to a self-defense instruction because a "belief" alone would not excuse or justify shooting a person. *See Halbert,* 881 S.W.2d at 125; *Preston v. State,* 756 S.W.2d 22, 25 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

## Apparent Danger

■ One does have the right to defend against a reasonable appearance and apprehension of apparent danger to the same extent as against actual danger. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App. 1984); *Courtney v. State,* 908 S.W.2d 48, 52 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). However, the trial court must first determine whether the evidence will support an "apparent danger" defensive instruction, and in reviewing that determination by the trial court, we must consider all of the evidence admitted at the trial. *Reese,* 877 S.W.2d at 333; *Courtney,* 908 S.W.2d at 52. Here, the instruction Appellant requested went beyond the basic defensive issue of insane delusion, yet did not instruct the jury to acquit him if a preponderance of the evidence showed that the delusion caused him to reasonably believe that the force he used was immediately necessary to protect himself from Mr. Allen's use or attempted use of unlawful force. Instead, Appellant just asked the court to instruct the jury to find him not guilty if they found that the insane delusion caused him to believe *specifically* that the victim presented him with an "apparent danger of death or serious bodily injury." Support for a defensive theory in those precise words, however, is nowhere in the evidence.

■ The defensive theory that was in the evidence suggested that Appellant suffered from an insane delusion that made him believe he should act in "self-defense" against Mr. Allen. The words "apparent danger" and "death or serious bodily injury" are not found in the statute that allows a defendant to claim self-defense. *See* TEX.PENAL CODE ANN. § 9.31.[1] An accused may claim self-defense without showing that the defensive force used was a justifiable reaction to an "apparent danger of death or serious bodily injury." *See id.* Moreover, when evidence shows that an accused was justified in using force in self-defense while in circumstances from which a reasonable person in the accused's position would not have retreated and while reasonably believing that deadly force was immediately necessary for protection from another person's use or attempted use of unlawful deadly force, the accused may be entitled to a jury instruction about the accused's right to use deadly force. *See* TEX.PENAL CODE ANN. § 9.32;[2] *Halbert,* 881 S.W.2d at 124, 125. But the instruction that Appellant asked for, and that the trial court denied, did not address those circumstances.

## Application of Law to Facts

■ In the charge, a trial court must apply the law to the facts of the case. *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex.Crim.App. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994).

■ In this case, the evidence did not raise a factual issue on whether Appellant faced, or even delusionally thought he faced, an "apparent danger of death or serious bodily injury" because no witness used that phrase in testimony. Although Dr. Helge testified that Appellant believed he was acting in "self defense," that is not the equivalent of an expert opinion that Appellant shot Mr. Allen because of a delusional belief that he was in "apparent danger of death or serious bodily injury" from Mr. Allen.

"Death or serious bodily injury" is a key phrase in the statutory definition of a "deadly weapon." *See* TEX.PENAL CODE ANN. § 1.07(a)(17) (Vernon 1994). Although by implication the jury instruction Appellant asked for suggests that Appellant delusionally thought he faced a deadly weapon, there was no testimony that the delusion caused him to believe that, if Mr. Allen had produced a weapon, it would have been a "firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury," or that, "in the

---

1. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 901, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3598 (current version at TEX.PENAL CODE ANN. § 9.31 (Vernon 1994 & Supp.1997)).

2. Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 5, 1983 Tex.Gen.Laws 5311, 5316–17, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3598 (current version at TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1997)).

manner of its use or intended use," Mr. Allen's imagined gun would be "capable of causing death or serious bodily injury." *See id.*

In stark contrast, Appellant testified that he did not see a gun in Emmett Allen's possession, and there is no evidence that there was any weapon at Mr. Allen's office during the confrontation, other than the pistol Appellant brought there and used to shoot Mr. Allen. The instruction that Appellant asked the judge to give would have been an improper *comment* on the evidence that could have nudged the jury to find what no witness had testified about: that at the time he shot Emmett Allen, Appellant delusionally believed he was in "apparent danger of death or serious bodily injury" from Mr. Allen or that if Mr. Allen had some weapon available, it was a "deadly weapon."

### Improper Comment on Evidence

■ It is not proper for a trial court to single out certain testimony and comment on it. TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1981 & Supp.1997); *Chambers v. State*, 700 S.W.2d 597, 599 (Tex.Crim.App.1985). Appellant argues that a trial court must submit a defendant's requested charge on insane delusion whenever there is evidence of that mental disease. To support that position, he relies on *Conaway*, 663 S.W.2d at 56. But even when there is evidence of insane delusion, the charge still must be tailored to fit that delusion to the facts of the case. *See Alexander*, 8 S.W.2d at 181; *Merritt I*, 50 S.W. at 387–88; *Merritt II*, 45 S.W. at 22–23. Unquestionably, the proper purpose of a court's charge is to lead the jurors to correctly apply the law to the fact issues that they must decide and to prevent confusion among the jurors as they perform that task. *Abdnor*, 871 S.W.2d at 731.

■ There are other sound reasons for a trial court to "custom-tailor" each instruction in a charge. One is that even a seemingly neutral instruction about a particular type of evidence (in this case, whether Appellant believed he faced an apparent danger of death or serious bodily injury) is an impermissible comment on the weight of the evidence in violation of article 36.14, if it suggests or

spins a distinctive "interpretation" of experts' testimony and singles out that testimony for the jury's special attention. *Matamoros v. State*, 901 S.W.2d 470, 477 (Tex.Crim.App. 1995); *Florio v. State*, 532 S.W.2d 614, 618 (Tex.Crim.App.1976). A trial court may reject an instruction that is an impermissible comment on the weight of the evidence. *Matamoros*, 901 S.W.2d at 477.

In *Conaway*, the jury heard an expert testify that due to the particular insane delusion afflicting Mr. Conaway, he would *in all reasonable probability* kill Conaway's victim as a matter of "self-defense." *Conaway*, 663 S.W.2d at 55. There, the appellate court pointed out that those facts, if true, would constitute a defense. *Id.* None of the three testifying experts in the instant case told jurors that because of Appellant's *insane delusion*, he would in all reasonable probability kill Mr. Allen in *self-defense*, as an expert opined about Mr. Conaway. Here, Appellant's claim of insane delusion was that Mr. Allen and others had stolen or were conspiring to steal his property. Neither a previous theft of Appellant's property nor a present conspiracy to steal his property would justify Appellant seeking out and killing a person he believed to be responsible. The three experts gave the jury opinions as to whether Appellant understood that his conduct in shooting Mr. Allen was *wrong*. The "insane delusion" evidence went to the issue of whether Appellant knew right from wrong, not whether in reasonable probability his delusion was that he should or would kill Mr. Allen in "self-defense." For the trial court to have instructed jurors that they could consider whether an insane delusion caused Appellant to believe that Mr. Allen presented Appellant with an apparent danger of death or serious bodily injury would have amounted to the court's own characterization or interpretation of certain portions of testimony. To have singled out that testimony by granting Appellant's request would have been an improper comment on the weight of the evidence. *Cf. Long v. State*, 823 S.W.2d 259, 279–81 (Tex.Crim.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992) (holding "delirium tremens" charge would have been improper comment).

Moreover, the facts of *Conaway* were that the accused had a delusion that his victim was *already* causing him serious bodily injury with a "voodoo spell." *Conaway*, 663 S.W.2d at 54. Here, Appellant asked for a charge that would have inferred that he believed he faced an *apparent* danger of death or serious bodily injury from Mr. Allen at the time of the shooting. From each of the cases we have cited that involved a charge on insane delusion, it is plain that there must be *evidence* of delusional facts that, if true instead of mere delusion, would have justified or been a defense to the crime committed. *See, e.g., Coffee*, 184 S.W.2d at 280. As applied to the facts of the instant case, the principles of both *Coffee* and *Conaway* necessitate *expert testimony* stating that in reasonable probability, Appellant's alleged perception of Mr. Allen reaching for a gun was based upon an insane delusion about an apparent danger of death or serious bodily injury from Mr. Allen, and that in reasonable probability, the insane delusion would cause Appellant to react by killing Mr. Allen. The experts stated no such opinions.

Without that, Appellant was left with his own testimony that characterizes him as the aggressor. On direct examination, he simply told the jury that he had confronted Mr. Allen after arming himself with a loaded .45 caliber handgun, held in the back of his belt, and "[a]s I was trying to leave out, well, he made a break to his desk, and I thought he was trying to get a gun ... *I pushed him down in his seat* ... he sort of *slid back to the window* and he was coming up ... that's when I come [sic] out with the gun [and shot him]. [Emphasis added.]" Appellant testified that he never saw Mr. Allen with a gun of his own. Appellant's daughter, a college student, testified that he told her he shot Mr. Allen because Mr. Allen laughed at him.

### Kindred Pleas

Among the defensive pleas available for an accused who wishes to show that a charged offense was justified are "necessity" and "self-defense." *See* TEX.PENAL CODE ANN. §§ 9.22, 9.31 (Vernon 1994 & Supp.1997). The two pleas are related in the sense that they must be assessed from the standpoint of the accused. *Leach v. State*, 726 S.W.2d 598, 600 (Tex.App.—Houston [14th Dist.] 1987, no pet.). In this case, Appellant was not attacked by Mr. Allen and did not see any gun available to Mr. Allen. His testimony about shooting Mr. Allen because "I thought he was trying to get a gun" is like a plea of necessity. *See* TEX.PENAL CODE ANN. § 9.22 (Vernon 1994). This court and others have held that a person who is responsible for having placed himself in the position that he attempts to extricate himself from by committing a criminal offense is not entitled to a charge authorizing his acquittal of that offense based upon necessity. *See Shafer v. State*, 919 S.W.2d 885, 887 (Tex.App.—Fort Worth 1996, pet. ref'd); *McFarland v. State*, 784 S.W.2d 52, 54 (Tex.App.—Houston [1st Dist.] 1990, no pet.); *Goodin v. State*, 750 S.W.2d 857, 862 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Leach*, 726 S.W.2d at 600.

Because there is no evidence that because of the particular insane delusion afflicting Appellant, he would in all reasonable probability kill Emmett Allen or that the delusion caused Appellant to believe specifically that Mr. Allen presented him with an "apparent danger of death or serious bodily injury," the trial court's charge on "severe mental disease or defect" properly applied the law to the facts that were in evidence. The trial court's charge adequately protected Appellant's rights, and the instruction requested by Appellant would have improperly commented on the evidence. The first point of error is overruled.

## II. THE RIGHT OF CONFRONTATION

The second point of error asserts that Appellant was erroneously denied the right to be confronted by a witness against him when the trial court released a State's witness over Appellant's objection during the trial's punishment phase. In every criminal trial, the defendant has a right to confront the prosecution's witnesses to guarantee the defendant an opportunity to cross-examine them. *See* U.S. CONST. amends. VI and XIV; TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 1.25 (Vernon 1977); *Pointer v. State*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 927 (1965); *Shel-*

*by v. State,* 819 S.W.2d 544, 546 (Tex.Crim. App.1991).

Appellant complains because Tom Woolridge, the State's only witness in the punishment phase of the trial, testified one afternoon in that phase but did not appear for more testimony the next morning when that part of the trial resumed. Mr. Woolridge is assistant director for Psychiatric Services with the Texas Department of Criminal Justice and is a registered nurse. He testified and was cross-examined by Appellant's counsel about psychiatric health care that his department provides for the prison inmates.

Appellant argues that the trial court abused its discretion by refusing to allow Appellant to recall Mr. Woolridge the next day. Appellant insists that the circumstances of the trial court's refusal compel us to conduct a harm analysis under the requirement of rule 81(b)(2):

> (2) *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2).

The record shows that Appellant's attorney ended his cross-examination of Mr. Woolridge with the words, "Thank you, Mr. Woolridge. You've been very informative." Passing a witness without reserving the right to recall is considered a deliberate exercise of defense trial strategy. *Silva v. State,* 622 S.W.2d 902, 904 (Tex.App.—Fort Worth 1981, no pet.). The next words on record are from the prosecutor: "No further questions, Your Honor." The trial court immediately asked, "May this witness be excused?" There was a bench conference between the judge and the lawyers, then the court announced, "Witness will be excused. Thank you very much." The jury was excused for the day, and Appellant's counsel told the court out of the jury's presence:

> In behalf of the defense, we do not agree to excuse this witness. I can't represent to the Court with 100–percent certainty I would recall him. But I can tell the court

that I think there's a possibility. I need to speak with some people this evening concerning some of the testimony and some of the opinions expressed by this man....

The court replied:

> You passed the witness. You were told by the Court that I was going to need to excuse him. And you asked him no further questions, which for all practical purposes, you had fifty-five minutes of cross-examination. And I think that that probably pretty well covered the subject, most of which he wasn't qualified to answer, anyway. So, the witness is excused. Your objection's on record. Good night....

Apparently, the witness drove back to Huntsville that evening.

As soon as an alleged error occurs, the offended party must state on the record a timely objection, on specific grounds, or the complaint is waived and not preserved for appellate review. TEX.R.APP.P. 52(a); *Briddle v. State,* 742 S.W.2d 379, 389 (Tex.Crim. App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). Appellant's objection to the witness' release by the trial court was timely and did state specific grounds. However, Appellant's statement of specific grounds for needing to recall the witness did not include the "confrontation rights" that we have already discussed and that are the grounds of point of error number two.

If the grounds asserted in a point of error do not comport with the grounds of the trial court objection from which the point of error arose, the point of error presents nothing for our review. *Sterling v. State,* 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Judd v. State,* 923 S.W.2d 135, 138 (Tex.App.—Fort Worth 1996, pet. ref'd). Because the objection Appellant made at trial did not complain about denial of the right of confrontation, that issue is not preserved for this appeal. *See* TEX.R.APP.P. 52(a). Accordingly, the second point of error is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

H. TOD WEAVER, Justice, (Assigned), dissenting.

I respectfully dissent with respect to the majority's disposition of point of error one regarding the trial court's denial of appellant's requested charge on insane delusion. I would sustain that point of error.

I concede that there was sufficient evidence to support the jury's conclusion that Miller knew his shooting of Allen was wrong, when, as in this case, the jury's conclusion was made only in light of the general charge on insanity that they were given by the trial court. Of course, the jury reached no conclusion based upon Miller's delusional state because the trial court refused to instruct on that issue as Miller requested, and in fact the charge that was submitted to the jury made no mention of insane delusion whatsoever.

I believe the majority is wrong in ignoring and in failing to apply the rule, long established by the courts of this State, that:

when the evidence raises an issue of whether a person is laboring under an insane delusion at the time he commits an act for which he is charged with a crime, the trial court, when requested, must instruct the jury on insane delusion so as to apply the law of the facts of the case, in addition to the general charge on insanity.

*See Coffee v. State,* 148 Tex.Crim. 71, 184 S.W.2d 278, 280 (Tex.Crim.App.1944); *Merritt v. State,* 40 Tex.Crim. 359, 50 S.W. 384, 387–88 (App.1899); *Conaway v. State,* 663 S.W.2d 53, 55 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). Based on those authorities, I believe the above rule should be followed in cases such as the one now before this court until such time as the Court of Criminal Appeals rules otherwise.

The majority believes the evidence, based on its overall weight, was insufficient to charge under the above rule. The State concedes that at the time of the shooting, Miller was suffering from a serious mental disease known as delusional disorder. It is undisputed that Miller killed Allen by shooting him with a pistol. I believe the testimony of Miller and other witnesses, which I outline below, warranted a charge on insane delusion.

**Oliver J. Miller, Sr.**

Miller testified at trial, and the following are excerpts from his testimony:

▶ Miller had seen Allen with a gun on August 8, 1994, the day before the shooting.

▶ When Allen traveled around Miller, he usually had a gun.

▶ Miller knew Allen had a gun. He had seen Allen's gun, a revolver, four or five times before August 9, 1994, plus he had seen it the day before the shooting. Sometimes Allen kept it in his file cabinet; sometimes he kept it in the desk drawer.

▶ When questioned about his taking a gun to Allen's office, Miller testified:

Well, I thought about it a while, you know, because I remember a while back, Mr. Allen went to a fellow's office and jumped on him and whipped him and he threatened to go home and get a gun. I think it was back in '91.—He went to this fellow's office and, you know, jumped on him for some reason, and I think he also threatened to go and get a gun.

▶ Miller also testified to conversations he had with Allen before August 9, 1994, where Allen told him that he "whipped someone's ass" at some time in the past, and that in those conversations Allen told him, in addition to threatening to "whip someone's ass," that he had threatened to go get his gun and kill him.

▶ Miller said he went to Allen's office because Allen was stealing his stuff and he thought he ought to take his gun, especially since Allen had stolen his stuff the day before.

▶ When asked what his intentions were in taking the gun to Allen's office, Miller replied "Well, just in case, you know. I knew he had one, so, you know, protection."

▶ Miller said when he asked Allen if he had his deeds, Allen said he didn't, and then all of a sudden Allen started get-

ting hostile and talking loud and cursing.

▶ When asked what happened next, Miller said he was trying to leave; that Allen made a break to his desk and Miller thought Allen was trying to get a gun; that when Allen went for the desk drawer Miller kind of pushed him, and he thought Allen was going for a gun.

▶ When asked on cross-examination if he realized that killing someone was wrong, Miller said at that particular time he was not thinking about that.

▶ He said he knew killing people was wrong, but at that time he didn't know it was wrong. When quizzed about that, Miller said "Well, it was protecting myself. . . . I was sort of protecting myself." When asked if he was claiming self-defense, Miller replied "Well, I'm claiming that I thought he was going for a pistol."

▶ When again asked if he shot Allen in self-defense, Miller replied "Yes. I believe it was either him or me. You know, I mean, he's going for a gun. . . . I was just trying to protect myself."

▶ When Miller was asked if he thought he was insane when he killed Allen, he replied "Well, I just snapped. I just snapped. The pressure just come, you know—when he made a break for the desk drawer, and, you know—the pressure just overwhelmed."

### Dr. Ann Turbeville

Dr. Ann Turbeville gave the following testimony about Miller:

▶ Miller had a delusional thought disorder on August 9, 1994, when he caused the death of Emmett Allen, and she felt Miller was delusional at that time. She said Miller's delusional disorder involved a huge number of people, attorneys, the court system, federal government, banks, funeral home, and relatives, and that in delusional thinking there is usually a basis of truth, "there's always a little teeny kernel of truth and, from that, people begin to put two and two together and come up with five."

▶ There is a feeling in psychiatry that delusional disorder is a type of projected depression; that a delusional disorder, which used to be called paranoid disorder, is a separate category of a major mental illness; that many delusional disorder sufferers are quite functional in society and are not necessarily delusional in all aspects of their life; and that "they certainly believe what's going on." She also said there was no evidence that Miller was malingering in this case.

▶ Dr. Turbeville thought Miller's reasoning and how he came up to the act of killing Allen was certainly delusional and not good thinking, but did not believe that it was so pervasive that it took in the whole world—that the world would want him to kill Allen. She also said she believed Miller knew what he was doing on August 9, 1994, was wrong.

▶ With respect to Miller's testimony, in justification of his beliefs, that Allen was going for a gun, Dr. Turbeville felt that appellant's contention was more likely a rationalization that was developed later, and more likely to be a rationalization than a consequence of his delusion. However, cross-examination revealed that at the time Turbeville expressed that opinion she was not aware of information before the jury that indicated that Allen had on a previous occasion told Miller of a circumstance in which he had assaulted a person and then threatened to go get a gun and kill that person. On further cross-examination, when asked if she thought that information would help justify Miller's opinion, in his own mind, that Allen was going for a gun at the time he was shooting, Turbeville replied "it certainly might help, yeah."

### Dr. Mark Cunningham

The testimony of Dr. Mark Cunningham about Miller was generally as follows:

▶ Miller suffers from a delusional disorder, a psychosis, being a disruption in thought processes or a disruption in the person's contact with reality, a disruption in understanding, a recognized mental condition, a sub-category of psychotic disorders. A delusional disorder is considered to be a severe phenomenon, a major criteria for being a severe mental disorder, a major psychiatric disorder.

▶ He said that this case concerns a specific type of delusional disorder called a persecutory type, where:

You think people are trying to get you, that they're conspiring against you, that they're going to plot against you or hurt you in some way.

▶ Dr. Cunningham said Miller does suffer from a delusional disorder of a persecutory type, continues to suffer from a major thought disorder, a delusional disorder, and has a severe mental disease or defect of a delusional disorder.

▶ He said that Miller believed there was a conspiracy against him and that delusional disorder individuals may resort to violence against those that they believe are hurting them or that they think are going to hurt their family in some way.

▶ Dr. Cunningham believed that Miller was suffering from a delusional disorder at the time of the shooting on August, 9, 1994, and that in this case Miller's mental illness precipitated a shooting. Dr. Cunningham believed that Miller did not know that his conduct was wrong; that Miller believed that his behavior was justified and was not morally wrong; that Miller thought because it was justified it was not wrong; and because of the presence of the delusion Miller did not regard this particular behavior as wrong.

▶ Dr. Cunningham said it's not just that a person is mentally ill, but that they are mentally ill at the time of the offense and because of that the person doesn't know that their behavior is wrongful.

▶ Dr. Cunningham said the psychiatric records of Miller that he reviewed established a delusional disorder sufficient to result in a finding to motivate a shooting.

▶ Dr. Cunningham said Miller acted in a manner that he thought was an appropriate self-defense. On the self-defense issue, Dr. Cunningham further testified:

I don't have a way to explain why Mr. Miller would kill Emmett Allen if it's not connected to this delusional belief—there's no apparent way of explaining this except in response to a delusion.

He (Miller) describes arming himself because he was fearful of Emmett Allen—he recalled that Emmett Allen carried a gun, had a gun—had bragged to him (Miller) about bullying people—when he described how he was able to get renters out of his apartments when he needed to evict them—he described Emmett Allen being someone who was potentially dangerous.

I think he (Miller) felt himself to be very much in danger.

I don't think that he (Miller) knew his conduct was wrong at the time of the offense, when he killed Emmett Allen, because he thought he was using self-defense.

He (Miller) is justifying it (killing Allen) to himself with a faulty delusional rationale.

In terms of delusional behavior, it doesn't make any difference whether any of that (Miller's statements about Allen having or going for a gun) was factually true.

### Dr. Swen Helge

The pertinent testimony of Dr. Swen Helge about Miller's actions was:

▶ In his opinion, Miller was suffering from a major mental disorder and was suffering from that disorder on August 9, 1994.

▶ Helge thought, within reasonable psychological probability, that Miller was suffering from a delusional disorder that rendered him insane at the time he shot Allen.

**820**

▶ It was the delusional disorder that Miller was suffering from that caused him to lack an understanding that his conduct was wrong.

▶ If Miller, on August 9, 1994, while laboring under the disability of that disease, believed that he was acting in self-defense, then the basis of that belief—that self-defense was necessary— was his delusional disorder.

▶ Dr. Helge believed that Miller was in fact acting in self-defense when he shot Allen, that Miller believed he was acting in self-defense, and the basis of that belief was his delusional disorder, which may or may not be grounded in fact.

In my opinion the evidence on Miller's delusional disorder and that he was suffering under that disorder at the time he killed Allen, was such to necessitate the jury being charged on insane delusion as Miller requested.

The majority opinion states the evidence did not raise a factual issue of whether Miller faced, or even delusionally thought he faced, an "apparent danger of death or serious bodily injury," because no witness used that phase in testimony. The majority opinion then apparently holds that to warrant an instruction on insane delusion in this case, there must have been expert testimony that in reasonable probability Miller's perception of Allen reaching for a gun was based upon an insane delusion about an apparent danger of death or serious bodily injury from Allen, and that in reasonable probability, the insane delusion caused Miller to react by killing Allen. I don't believe it is necessary that those "magic words" be included in an expert's testimony in order to warrant an instruction on insane delusion.

The testimony outlined above, taken as a whole, was sufficient to show that Miller delusioned himself as being in apparent danger of death or serious bodily injury, and that in shooting Allen he was preserving his own life or safety, or at the very least the evidence raised a fact issue regarding that matter. Under the theory of delusional self-defense, a jury is required to judge the defendant's actions in light of the facts as he perceived them to be, rather than under a reasonable person standard. Whether Miller's killing of Allen should have been excused because he was acting under an insane delusion at the time was a question to be determined by the jury.

I also disagree with the majority's holding that the granting of Miller's requested instruction would have amounted to an improper comment on the evidence. As mentioned above, I feel there was evidence indicating that Miller delusioned that he was in apparent danger of death or serious bodily injury. The requested instruction would have properly applied the law to those facts.

I would sustain point of error one, hold that the refusal to submit Miller's requested instruction resulted in harm to him, reverse the conviction, and remand the case for a new trial.